CHRISTOPHER LITTLE ⎫
         vs.                 ⎬   DECEMBER TERM, 1847.
JOHN R. PRICE ET AL.   ⎭

[EFFECT OF AN INJUNCTION ON PROCEEDINGS AT LAW—LIMITATIONS.]

THE object of an injunction to stay proceedings at law, either before or after judgment, is to prevent the party against whom it issues, from availing himself of an unfair advantage, resulting from accident, mistake, fraud, or otherwise, and which would, therefore, be against conscience.

If such unfair advantage has been already obtained, by proceeding to judgment, the court will in like manner control the judgment, and restore the party to his original rights.

This can only be done by depriving his adversary of every advantage, which the judgment thus improperly obtained, gives him, and cannot be limited merely, to restraining him from proceeding upon it at law.

Hence, an injunction commanding and enjoining the complainant, to cease from all proceedings on his judgment recovered at law, was held to operate to restrain him from proceeding in equity.

It is well settled by the Maryland decisions, that chancery will never interfere with judgments at law, where the party's own default, or neglect, has made an application to the latter tribunal necessary.

The running of the act of limitations is suspended by an injunction

[The facts in this case are fully stated in the Chancellor's opinion.]

THE CHANCELLOR:

This is a creditor's bill filed against the devisees and others, representing, or supposed to represent, the real and personal estate of Hyland Price, deceased, and prays for a sale of the real estate left by him, upon an allegation of the insufficiency of the personalty.

The bill was filed on the 21st of August, 1846, and alleges, that in the year 1822, the complainant obtained a judgment of condemnation against the said Price, upon an attachment which he had sued out on a judgment in his favor against one George Davidson, rendered in 1819—that he had subsequently issued a scire facias on the said judgment of condemnation, and obtained a fiat executio at April term, 1829, of the Cecil County Court, with a stay of execution until January, 1830—that the

complainant would have proceeded to execute his judgment at law, but was restrained by an injunction granted by this court, upon a bill filed by Price, the defendant, which was not dissolved until the conclusion of the March term, 1846—that Price having died, leaving a will sufficient to pass real estate, and his personal estate in the hands of his executors being insufficient to pay his debts, a sale of the real, in the hands of his devisees, is prayed for.

The answer of such of the defendants as are of age, to this bill, insists, that the judgment of the condemnation against Hyland Price in 1822, was the result of an agreement between him and the complainant, by which it was stipulated that payment thereof would not be enforced unless such payment would operate as a discharge of a bond which Price, the defendant, had given to one Philemon C. Blake, for his interest in certain real estate, upon which the said Davidson alleged he had a mortgage—that Davidson had in fact no claim to the mortgage in his individual capacity ; the same, if in his possession at all, being held by him as administrator of his father James Davidson, to whom it had been given by Blake—that the bond which Hyland Price had given Blake, had passed into the hands of other parties, by whom, under the circumstances stated in the answer, a decree by the court was obtained for the payment thereof; and the answer begs leave, at the trial of this case, to refer to the proceedings in the injunction cause, and also the cause in which the said decree was passed.

The injunction bill by Hyland Price, was filed on the 14th of January, 1830. He died in the year 1842, and his executors having become parties, the answer of Little was filed on the 10th of December, 1845, and a motion then made by him to dissolve the injunction, which was accordingly dissolved by the Chancellor's order of the 27th of April, 1846 ; and on the 5th of June following, the complainants in that cause prayed an appeal to the Court of Appeals, where it is still depending.

The prayer of this bill thus filed by Price, is for an injunction to be directed to the said Little, commanding and enjoining him to cease from all proceedings on the judgment afore-

said, and for general relief, and the order of the Chancellor was in conformity with the prayer.

Under these circumstances the cause, originating upon this creditor's bill, is brought on for hearing, and the solicitors of the parties have been heard.

The complainant, Little, founds his right to a decree for the sale of the real estate of Hyland Price exclusively upon the judgment of condemnation of 1822, and the *fiat executio* of 1829. Upon these, and upon the alleged insufficiency of the personal estate, he insists that he is entitled to a decree for the sale of the realty. He denies emphatically the right of the defendants to look behind these judgments, by which he maintains that Hyland Price, and all who represent him, are concluded.

It is not the purpose of the court, at this time, to intimate any opinion upon the merits of this case, or to express in any way the conclusions to which the Chancellor may come, upon full consideration of the circumstances under which those judgments were rendered ; because, according to the view which I now take, it would be premature at this time to pass a decree in this cause.

The counsel for the complainant argued that the injunction, granted upon the bill filed by Price in 1830, and which was not dissolved until 1846, and upon which an appeal is now depending in the Court of Appeals, did not operate to restrain this complainant, Little, from proceeding in equity, and, that the whole effect of the prohibition was to prevent proceedings at law upon the judgment. This, however, is not the view which I take of the subject, and as the bill in this case was not filed until after the dissolution of the injunction, though Price died in 1842, it may be inferred it was not the view at one time taken by the complainant himself, as it is difficult to assign a reason for the delay in filing the bill until after the dissolution of the injunction, unless it was thought that its continuance was a legal or equitable impediment to such a proceeding.

But, independently of any inference to be drawn from the conduct of the complainant, and in the absence of any direct au-

thority upon the question, it seems very clear, that the effect of the injunction must be much more extensive than is conceded to it by the complainant's solicitor.

The object of an injunction to stay proceedings at law, either before or after judgment, is to prevent the party against whom it issues, from availing himself of an unfair advantage, resulting from accident, mistake, fraud, or otherwise, and which would therefore, be against conscience. In such cases the court will interfere, and restrain him from using the advantage which he has improperly gained—and, as Mr. Justice Story says, "if any such unfair advantage has been already obtained, by proceeding to judgment, the court will in like manner control the judgment, and restore the injured party to his original rights." The judgment, then, is not only to be controlled, but the party against whom it was unfairly obtained is to be restored to his original rights, which can only be done by depriving his adversary of every advantage which the judgment thus improperly obtained gives him, and cannot be limited merely to restraining him from proceeding upon it at law. 2 *Story's Equity*, secs. 885, 886, 887.

Besides, it would, indeed, be singular, if a court of equity should interfere by injunction, to prevent a party from obtaining at law, the fruits of a judgment unconscientiously obtained, and should at the same time permit that same party, by a proceeding in equity, to get the benefit of the condemned judgment. Suppose, for example, in this case, the Court of Chancery upon the injunction bill, or the Court of Appeals upon appeal to that tribunal, should ultimately decide that the judgment obtained by Little against Price was obtained under circumstances which would render it inequitable in him to enforce, and upon that ground, should decree a perpetual injunction; would it not be strange, if the same court upon the application of the plaintiff in the judgment, to give him the advantage of it, should so decree. The court would be in one breath saying, this judgment was unfairly obtained, and its extraordinary power would be exerted to prevent the court in which it was rendered from enforcing it, and in the next, that the party who

16*

comes here for relief, upon the footing of that very judgment, has shown himself entitled to equitable relief. It seems to me impossible that a doctrine fraught with such consequences, can be maintained; and, therefore, to avoid inconsistent and antagonistic decrees in relation to the same matter, I am of opinion that this case cannot now be decided.

It has been said, that the court cannot, as this case stands, look at the proceedings in the injunction case; but seeing that both the bill and the answer refer to them—the former for the purpose of accounting for the failure of the plaintiff to execute his judgment at law, and the latter praying that the defendant may be allowed to refer to them at the trial of this cause—it seems to me that I cannot shut my eyes to their existence; and upon looking at those proceedings, and seeing that a decree may be passed by the Court of Appeals, upon the appeal, which might render a decree in favor of the complainant in this case unavailable, I cannot think it would be proper now to proceed to a final decree.

———

[The order of the Chancellor of the 27th of April, 1846, dissolving the injunction, having been affirmed by the Court of Appeals at June term, 1848, and the difficulty suggested in his foregoing remarks consequently removed, the Chancellor, in his opinion of the 28th July, 1848, said:]

———

An effort has been made to impeach the judgment of the complainant, but, I think, without success.

Though the judgment of condemnation of 1825 was by default, that of *fiat executio* of 1829 was by confession, and I am unable to see anything in the circumstances, as shown by the proceedings in this case, or in the case referred to in it, which should induce a court of equity to refuse to give effect to it.

The reluctance with which courts of equity interfere with judgments at law is conspicuous in the adjudged cases, and it is believed to be well settled by the Maryland decisions, that chancery never will so interfere, where the parties own default, or neglect, has made an application to the latter tribunal neces-

sary. *Carr* vs. *Gott*, 6 *Gill & Johns.*, 312 ; *Fowler* vs. *Lee*, 10 *ibid.*, 358.

I do not think there is anything in the delay in bringing the case growing out of the bill filed by Price in 1830, to a close, which should now cause this court to treat the judgment as an invalid security, as it is quite obvious that Price might himself have long since brought that case to an end.

I think the executors of the deceased are properly before the court as such, and that there is evidence of the sufficiency of the personal estate.

The running of the act of limitations was suspended by the injunction from 1840 to 1846, and therefore the plea of the statute is no defence.

My impression, therefore, is, that here is a valid unsatisfied judgment, and that the personal estate of the deceased debtor is insufficient to pay him ; and not seeing in the objection urged by the defendant's counsel any reason why the court should not pass a decree for the sale of the real estate left by the debtor, a decree will be signed accordingly. But, for the sake of convenience, and to avoid conflict and confusion, this case will be consolidated with the case upon the mortgage referred to in the proceedings.

[No appeal was taken from this decree.]