Alvin **BRAXTON** et al., Plaintiffs,

v.

**VIRGINIA FOLDING BOX COMPANY et al., Defendants.**

William **CROCKETT** et al., Plaintiffs,

v.

**VIRGINIA FOLDING BOX COMPANY et al., Defendants.**

Civ. A. Nos. 76–0117–R, 562–72–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 9, 1976.

Francis V. Lowden, Jr., Abram Vander-Mere, Jr., Hunton & Williams, Jay J. Levit, Stallard & Levit, Andrew W. Wood, Wood & Schmidt, Richmond, Va., for defendants in Civ. A. No. 76–0177–R.

Geoffrey Judd Vitt, Robert B. Wallace, Alexandria, Va., Robert B. Fitzpatrick, Washington, D. C., for plaintiffs in Civ. A. No. 562–72–R.

Francis V. Lowden, Jr., Thomas J. Manley, Abram W. VanderMeer, Hunton & Williams, Jay J. Levit, Richmond, Va., for defendants in Civ. A. No. 562–72–R.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, black employees of the defendant, Virginia Folding Box Company (VFBC), bring this action under 42 U.S.C. §§ 1981, 2000e–2 to redress alleged racially discriminatory employment practices. Plaintiffs seek injunctive and monetary relief. Defendants include the Virginia Folding Box Company (VFBC), the Bellwood Printing Pressmen, assistants and Speciality Workers, Local Union 670 (Local 670) and the International Printing and Graphic Communications Union (International). Jurisdiction is attained pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 2000e–5(f). The matter comes before the Court on the motion of defendants to dismiss, and the plaintiffs' response thereto.

The plaintiffs allege that VFBC's practice of requiring successful passage of certain aptitude tests as a precondition to being hired for certain positions or being considered for promotions coupled with the seniority provisions in effect at VFBC perpetuates past racial discrimination. A similar claim is raised in *Crockett v. Virginia Folding Box Company*, C.A. No. 562–72–R (E.D. Va.). The *Crockett* case was filed on November 13, 1972. In *Crockett*, the plaintiffs sought to challenge the legality of all aptitude tests upon which VFBC relies in making its hiring and promotional decisions. A motion for class certification was pending

Robert B. Fitzpatrick, Washington, D. C., Robert B. Wallace, Alexandria, Va., for plaintiffs in Civ. A. No. 76–0177–R.

in *Crockett* on December 10, 1973 when the instant plaintiffs moved to intervene.

The Equal Employment Opportunity Commission issued the instant plaintiffs a right to sue letter under date of January 16, 1974. Five days thereafter, the instant plaintiffs filed an amended motion to intervene in the *Crockett* case reflecting that the right to sue letter had been issued. At the time the instant plaintiffs moved to intervene in *Crockett,* it appeared that the scope of that litigation would include the issues raised by these plaintiffs. As the *Crockett* case proceeded through discovery, the controversy began to focus on two particular aptitude tests. A hearing was held in that case on January 22, 1976 in which several pending motions, including the motion to intervene, were considered. Counsel for the instant plaintiffs, who also represent the *Crockett* plaintiffs, advised the Court of the narrowing focus in *Crockett.* In light of this development, counsel for the plaintiffs moved to voluntarily withdraw the amended motion to intervene without prejudice in order that the *Braxton* plaintiffs could proceed in an independent action. Plaintiffs' counsel was expressly concerned with the effect of the two-year pendency of the motion to intervene on the 90-day filing period under Title VII. An understanding was reached by the Court and all counsel that the motion of the *Braxton* plaintiffs to intervene in *Crockett* would be voluntarily withdrawn and *Braxton* could proceed as a separate action. The motion to withdraw without prejudice was orally granted at the January 22, 1976 hearing and formally entered in writing on February 4, 1976. Thereafter, on April 21, 1976 this action was filed.

It is against this procedural background that the motions to dismiss must be considered. Each of the defendants assert that the filing of the *Braxton* case on April 21, 1976 was untimely for both the Title VII and the Section 1981 claims. The gist of this contention is that the voluntary dismissal of the motion to intervene leaves the action as though it had never been filed, and hence, the 90-day limitation period of Title VII and the two-year limitation period of Section 1981 expired prior to the actual filing of the instant action. Additionally, International contends that it cannot be made a party to this action as it was not a party before the EEOC.

■ The plaintiffs' filing of a motion to intervene accompanied by proper pleadings is regarded as the commencement of an action for purposes of determining whether the action is barred by the running of the statute of limitations. *Jack v. Travelers Insurance Co.,* 22 F.R.D. 318 (E.D.Mich. 1958), *aff'd,* 277 F.2d 736 (6th Cir. 1960); *Securities and Exchange Commission v. Keller Brothers Securities Co.,* 30 F.R.D. 532 (D.Mass.1962). *See generally* Moore's Federal Practice ¶ 24.12[1] n. 7 (2d ed. 1975); Wright & Miller, Federal Practice and Procedure § 1914 (1971). An analogy is drawn between the motion to intervene in this context and a separate timely filed action. Where an action is voluntarily dismissed without prejudice, the parties are left as if the action had never been brought. *A. B. Dick Co. v. Marr,* 197 F.2d 498, 502 (2d Cir. 1952); *Humphreys v. United States,* 272 F.2d 411 (9th Cir. 1959); *Webb v. Nolan,* 361 F.Supp. 418, 420 (M.D.N.C.1972), *aff'd,* 484 F.2d 1049 (4th Cir. 1973). Consequently, the statute of limitations is not tolled by filing an action that is subsequently voluntarily dismissed. *Kington v. United States,* 396 F.2d 9 (6th Cir. 1968); *Humphreys v. United States,* 272 F.2d 411 (9th Cir. 1959). *See generally,* 5 Moore's Federal Practice, ¶ 41.05[2] (2d ed. 1975); 9 Wright § Miller, Federal Practice and Procedure § 2368 (1971). These principles have been applied to Title VII actions. *See, e. g., Cleveland v. Douglas Aircraft Co.,* 509 F.2d 1027, 1030 (9th Cir. 1975); *Johnson v. Railway Express Agency, Inc.,* 489 F.2d 525, 528 (6th Cir. 1973), *aff'd,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *McClendon v. North American Rockwell Corp.,* 2 CCH E.P.D. ¶ 10,243 (C.D.Cal.1970). The analogy drawn between the motion to intervene and a separate action would compel the conclusion that the voluntary withdrawal of the motion to intervene likewise does not toll the running of the limitation period.

■ It is the clear recollection of the Court that the plaintiffs' voluntary withdrawal of the motion to intervene was conditioned upon retaining the ability to file a separate action. Unfortunately, the appropriate procedure for achieving the desired result was not utilized. The *Braxton* plaintiffs' claim could have been protected by granting the motion to intervene and then severing the complaint from *Crockett.* See Fed.R.Civ.P., Rules 24 and 42(b). Such a procedure has been utilized in this district. *See MacKethan v. Peat, Marwick, Mitchell and Co.,* C.A. No. 74–0013–R (E.D.Va. May 13, 1976).

Plaintiffs' claims are not so inconsequential to be permitted to perish by reason of a tactical blunder. The Court is satisfied that the intent of all the parties was that the *Braxton* case would proceed as a separate action. The defendants, moreover, have not convinced the Court that they would in any manner be prejudiced by permitting this action to continue as contemplated in the January 22, 1976 hearing held in *Crockett.* Justice requires that the Court do what should have been done in February of 1976. Accordingly, the Court will vacate the Order dated February 4, 1976 in *Crockett* and enter an order *nunc pro tunc* reflecting the understanding of the Court with regard to the motion to intervene. The authority for this action lies in the Court's inherent equitable power to modify an interlocutory order at any time prior to final judgment. *See Simmons Co. v. Grier Bros. Co.,* 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922); *United States v. Jerry,* 487 F.2d 600, 605 (3d Cir. 1973); *Hodgson v. U. M. W. A.,* 153 U.S.App.D.C. 407, 473 F.2d 118, 125–26 n. 38 (1972); *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858, 862 (5th Cir. 1972). *See generally* 7 Moore's Federal Practice ¶ 60.16[4] (2d ed. 1975); 11 Wright & Miller, Federal Practice and Procedure § 2852 (1973).

■ International also raises as a ground for dismissal the failure of the plaintiffs to name it in the charge to the EEOC. This, of course, has no bearing on the Section 1981 claims. The Section 1981 claims are unquestionably timely under the continuing discrimination doctrine as both the practice and its effects are alleged to be ongoing. *See Williams v. Norfolk & Western Railway Co.,* 530 F.2d 539, 542 (4th Cir. 1975); *Macklin v. Spector Freight Systems,* 156 U.S. App.D.C. 69, 478 F.2d 979, 994 (1973). It is also settled that 42 U.S.C. § 1981 provides a separate, distinct and independent means of attacking racially discriminatory employment practices. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Thus, the issue becomes one concerning the propriety of joining the International as a defendant to the Title VII claims.

The International concededly was not a party to the EEOC proceedings. This generally would preclude naming it as a defendant in a civil suit under Title VII. *LeBeau v. Libbey-Owens Ford Co.,* 484 F.2d 798 (7th Cir. 1973); *Mickel v. South Carolina State Employment Service,* 377 F.2d 239 (4th Cir. 1967). An exception to this general rule permits the joinder of a nonparticipating union when it is a signatory to a collective bargaining agreement containing provisions which may need to be interpreted or altered during the course of litigation. *See EEOC v. MacMillan Bloedel Containers,* 503 F.2d 1086, 1095–96 (6th Cir. 1974); *EEOC v. McLean Trucking Co.,* 525 F.2d 1007 (6th Cir. 1975); *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 503 F.2d 177, 180–84 (1974); *Held v. Missouri Pacific Railway Co.,* 373 F.Supp. 996 (S.D.Tex. 1974); *Reyes v. Missouri-Kansas-Texas R. R. Co.,* 53 F.R.D. 293 (D.Kan.1971). It is not clear whether a union joined under such circumstances can be held liable for violations of Title VII. *Compare EEOC v. MacMillan Bloedel Containers, supra, with Evans v. Sheraton Park Hotel, supra* and *Torockio v. Chamberlain Mfg. Co.,* 51 F.R.D. 517 (W.D.Pa.1970). It is the position of plaintiffs that the Local Union, which did participate in the EEOC proceedings, is merely an agent of the International, thus making the International amenable to the Title VII action. *See Taylor v. Armco Steel Co.,* 8 CCH E.P.D., 9550 (S.D.Tex.1973), *rev'd on other grounds,* 429 F.2d 498 (5th

Cir.); *Williams v. Local 19,* 59 F.R.D. 49 (E.D.Pa.1973). *Cf. United States v. Teamsters,* 275 F.2d 610 (4th Cir. 1960).

As the International is a signatory to the collective bargaining agreement whose provisions are subject interpretation and potential alteration in the instant litigation, it may be properly joined as a defendant to this action at least for the limited purposes heretofore alluded to. Whether the International will be subject to Title VII liability under an agency or some other theory must await further development of the facts. Suffice it to say that the complaint alleges sufficient grounds for keeping the International in the action at this point in the proceedings.

An appropriate order will issue.