# WALKO CORPORATION *v.* BURGER CHEF SYSTEMS, INC. ET AL.

[Misc. No. 2, September Term, 1977.]

*Decided October 24, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Elbert R. Shore, Jr.,* with whom were *John T. Bell, Frank S. Cornelius* and *Bell & Cornelius* on the brief, for appellant.

*Nancy C. Garrison,* with whom were *Max O. Truitt, Jr., Wilmer, Cutler & Pickering* and *Robert P. Stranahan, Jr.,* on the brief, for appellee Burger Chef Systems, Inc. *Harry W. Goldberg,* with whom were *Thomas A. Gentile, Marc R. Wagshal* and *Robert J. Sher* on the brief, for appellees Robert Holtzman and William Platt.

LEVINE, J., delivered the opinion of the Court.

Pursuant to the Uniform Certification of Question of Law Act, Maryland Code (1974), § 12-601 of the Courts and Judicial Proceedings Article, the United States Court of Appeals for the District of Columbia Circuit has certified the following question for our decision: Was the statute of limitations prescribed by § 5-101 of the Courts and Judicial Proceedings Article suspended during the pendency of appellant's motion for leave to intervene, ultimately denied, in a civil action in the United States District Court for the District of Columbia? We hold that the statute of limitations was not tolled.

The events that led directly to this proceeding began in July 1972, with the institution of a breach of contract action in the United States District Court for the District of Columbia by Robert Holtzman and William Platt (Holtzman and Platt) against Burger Chef Systems, Inc. (Burger Chef), all of whom are designated as appellees here. More than 16 months later, on November 17, 1973, Walko Corporation (Walko), designated appellant here, moved to intervene in

the Holtzman and Platt-Burger Chef case, seeking damages against those parties for breach of contract and fraud. The district court found Walko's allegations to be "entirely unrelated to the subject matter" of the underlying suit and denied the motion to intervene on January 15, 1974.

On February 28, 1974, Walko filed a diversity suit against appellees alleging the same cause of action on which it had relied in its unsuccessful attempt at intervention.[1] Appellees responded with a motion for summary judgment in which they interposed the statute of limitations as a defense. The district court, finding that Walko's action had accrued on or about January 26, 1971, and that the Maryland statute of limitations, requiring such a civil action to be "filed within three years from the date it accrues," was controlling, dismissed the suit "with prejudice."

On appeal, the United States Court of Appeals concluded that unless the running of the statutory period had been arrested for the 60-day period during which the motion to intervene lay pending before the district court, the action was barred by limitations. Whether the statute had been tolled, the court held, was a question of Maryland law. Finding, however, that the law of this state was "unclear" in this regard, the court of appeals certified the question to this Court for resolution. *Walko Corp. v. Burger Chef Systems, Inc.*, 554 F. 2d 1165, 1172 (D.C. Cir. 1977).

At the outset, two preliminary observations are in order. First, we proceed from the premise, as did the federal appellate court in accepting the finding of the district court, that the cause of action in dispute accrued on or about January 26, 1971. Secondly, appellees present a threshold issue: whether the filing of both the motion to intervene and the intervenor's complaint constituted the commencement of an action under Maryland Rule 140 a for purposes of determining whether the statute of limitations was temporarily suspended. So that we may reach the question

1. The diversity suit was originally filed in the United States District Court for the District of Maryland, but on the joint motion of the parties was transferred to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404 (a) (1970).

certified to us, we shall assume without deciding that the filing of those papers met that requirement. *See Braxton v. Virginia Folding Box Co.,* 72 F.R.D. 124, 126 (E.D. Va. 1976); *Farris v. Sears, Roebuck & Co.,* 415 F. Supp. 594, 596 (W.D. Ky. 1976); *Jack v. Travelers Ins. Co.,* 22 F.R.D. 318, 319 (E.D. Mich. 1958), *aff'd on other grounds,* 277 F. 2d 736 (6th Cir. 1960).

In *Chase Securities Corp. v. Donaldson,* 325 U. S. 304, 314, 65 S. Ct. 1137, 89 L. Ed. 1628 (1945), the Supreme Court described the nature and purpose of limitations statutes in the following terms:

> "Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. ... (citation omitted). They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate."

*Accord, Feldman v. Granger,* 255 Md. 288, 296-97, 257 A. 2d 421 (1969); *Burket v. Aldridge, Adm'r,* 241 Md. 423, 428, 216 A. 2d 910 (1966); *see Burnett v. New York Central R. Co.,* 380 U.S. 424, 428, 85 S. Ct. 1050, 13 L.Ed.2d 941 (1965).

This policy of repose has fostered a traditional rule concerning the tolling of statutes of limitation that can be fairly termed one of strict construction. Early on we adopted this rigorous stance: "The principle of law is indisputable, that when the Statute of Limitations once begins to run, nothing will stop or impede its operation." *Ruff v. Bull,* 7 H. & J. 14, 16, 16 Am. Dec. 290 (1825); *accord, Gibbons v. Heiskell,* 90 Md. 6, 9, 44 A. 996 (1899); *Young v. Mackall,* 4

Md. 362, 374 (1853). The rule has lost little of its vitality. As we said far more recently in *Burket v. Aldridge, Adm'r*, 241 Md. at 429, the principle enunciated in *Ruff*, "while not immutable under all circumstances, . . . is still the general legal approach." In *Weaver v. Leiman*, 52 Md. 708, 718 (1880), where the question presented was whether suit had been filed within three years after removal of the disability of infancy, the Court said:

> "Apart from the savings and disabilities expressed in the Statute [of Limitations] itself, there must, in order to defeat its operation, be some insuperable barrier, or some certain and well-defined exception clearly established by judicial authority."

*Accord, Jolivet v. Elkins*, 386 F. Supp. 261, 272 (D. Md. 1974); see *McMahan v. Dorchester Fert. Co.*, 184 Md. 155, 160, 40 A. 2d 313 (1944) ("where the Legislature has not made an exception in express words in the Statute of Limitations, the Court cannot allow any implied and equitable exception to be engrafted upon the statute merely on the ground that such exception would be within the spirit or reason of the statute.").

This venerable rule, which defers to the legislative intent expressed in the statute of limitations itself, and avoids implied exceptions or strained constructions, is also applicable in cases such as the one at bar where an action filed initially within the required period fails for some technical, procedural defect falling short of a full decision on the merits. Absent a statutory provision saving the plaintiff's rights,[2] the remedy is barred where limitations

---

2. Maryland is one of a minority of states lacking a "saving" statute. *See* Burnett v. New York Central R. Co., 380 U. S. 424, 433, 85 S. Ct. 1050, 13 L.Ed.2d 941 (1965). Such statutes, though varying in terms from state to state, are rooted in § 4 of 21 James 1, c. 16 (1623). In Bertonazzi v. Hillman, Adm'x, 241 Md. 361, 370-71, 216 A. 2d 723 (1966), we recognized that no saving statute was effective in Maryland today, although we did profess to follow the "spirit" of § 4 in holding that the statute of limitations was tolled by a timely action which was subsequently dismissed for improper venue. In doing so, we suggested that § 4 may have been imported into the law of Maryland prior to independence. *See* Drane v. Hodges, 1 H. & McH. 518 (1773). *But see* Cawood v. Whetcroft, 1 H. & J. 103 (1800) (Court refused

has run during the pendency of the defective suit. *See Weaver v. Leiman*, 52 Md. at 718; *Cromwell v. Ripley*, 11 Md. App. 173, 182, 273 A. 2d 218 (1971). *Cf. McQuaid v. United Whole. Alum. Supp.*, 31 Md. App. 580, 588 n. 8, 358 A. 2d 922 (1976) (where the court indicated that statute of limitations would continue to run without tolling against plaintiff whose action had been dismissed under Rule 310 for lack of prosecution). The Supreme Court stated the applicable rule in *Willard v. Wood*, 164 U. S. 502, 523, 17 S. Ct. 176, 41 L. Ed. 531 (1896):

> "The general rule in respect of limitations must also be borne in mind, that if a plaintiff mistakes his remedy, in the absence of any statutory provision saving his rights, or where from any cause a plaintiff becomes nonsuit or the action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred. . . ." (citations omitted.)

Walko argues that two federal decisions support its position. In *United States v. MacKenzie-Foster Co.*, 207 F. Supp. 210 (D. Mass. 1962), a timely filed intervenor's petition for recovery of the price of materials furnished a subcontractor was unaccompanied by a motion to intervene, although the motion was ultimately filed after the expiration of the period of limitations under the Miller Act. The court held that the claim was *barred* by limitations and denied the motion. Equally inapposite is *Securities & Exch. Com'n v. Keller Bros. Securities Co.*, 30 F.R.D. 532 (D. Mass. 1962), decided on the same day as *MacKenzie-Foster*. There, motions to intervene in proper form were filed timely, but were challenged on the ground that the statute of limitations had expired before the court could act on the motions. In rejecting that challenge, the court held that the determinative date for purposes of limitations was that on

---

to invoke § 4 where former suit had been dismissed by plaintiff). *See also* Piersma v. Seitz, 10 Md. App. 439, 454 n. 12, 271 A. 2d 199 (1970) (Orth, J. dissenting). It does not appear that we have held § 4 to be controlling in any case during the last 200 years. In any event, that statute by its terms is clearly not applicable in the present case, with the result that Walko must face the onerous requirements of the traditional anti-tolling rule.

which the motions had been filed, not that on which the court had scheduled the motions for hearing. This decision is readily distinguishable from the present case for the simple reason that the motion to intervene in *Keller* was properly filed in all respects and, when granted, was held to relate back to the time of the original filing. Walko's motion, on the other hand, which was ultimately denied, was, in effect, a procedural nullity with respect to the tolling of the limitations period. Clearly, then, the *Keller* case and related decisions provide absolutely no authority for interrupting the operation of the statute here.

Nor does *Little v. Price*, 1 Md. Ch. 182 (1847), afford support for Walko's position. There, the chancellor merely held that the running of limitations had been suspended while the plaintiff was enjoined by a court decree from filing his action at law. Manifestly, a court injunction against filing is such an "insuperable barrier" as might toll the running of the statute. *Weaver v. Leiman*, 52 Md. at 718.

At first blush, *Bertonazzi v. Hillman, Adm'x*, 241 Md. 361, 216 A. 2d 723 (1966), would appear to stand as authority for the broad proposition that under Maryland law the running of the limitations period is tolled by a procedurally defective action which is timely filed. This is not borne out, however, by an analysis of that case. There, suit was commenced well within the three year period of limitations, but in Baltimore County instead of Baltimore City where the defendant resided. This occurred because the defendant's residence was situated so close to the boundary line that the plaintiff's attorney misinterpreted the location on the map. Counsel then learned that the defendant had died some 44 days before suit was filed. He apparently became " 'panic stricken' " at the possibility that the suit might be barred because of the expiration of the six-month period within which suit was required to be brought against a personal representative under then Code (1957, 1964 Repl. Vol.) Art. 93, § 112. He thus hurriedly obtained service on the defendant's widow who had qualified in Baltimore City as personal representative. This occurred within the required six-month period. Because of improper venue, however, the

suit was dismissed, but by that time more than six months had elapsed following qualification of the personal representative. Within one or two hours, a new suit was filed in Baltimore City, but was dismissed on a plea of limitations because it had not been brought within the required six-month period. This Court reversed on the ground that the filing of the suit in Baltimore County had tolled the statute of limitations.

In *Bertonazzi* the Court carved out a narrow exception to the traditional rule against engrafting implied exceptions upon the statute of limitations in certain situations where the sole reason for the dismissal of the prior action was improper venue. In doing so, the Court noted that Maryland was one of but a mere handful of states having neither a saving statute nor a venue transfer statute,[3] *see Burnett v. New York Central R. Co.*, 380 U. S. at 433 n. 12, a fact which, absent the Court's limited holding, might well have wrought great injustice on unwitting plaintiffs in particular cases. Just how narrow the *Bertonazzi* exception was intended to be was promptly demonstrated in *Burket v. Aldridge, Adm'r*, 241 Md. at 423, decided a day later. There, suit was initially filed within the required three-year period, but the sheriff's return of "mortuus est" revealed to the plaintiff that the defendant had died. Service was then made upon the personal representative within the six months required by Art. 93, § 112, but not within the three-year statute of limitations. In affirming a dismissal, we held that it was necessary for the suit to be filed "both within three years from the date of the injuries and within six months from the qualification of the personal representative." *Id.* at 430. *Bertonazzi* stands alone, then, confined to the special circumstances which culminated in the filing of the suit in the wrong county.

Whatever facts may have been present in *Bertonazzi v. Hillman, Adm'x*, 241 Md. at 370-71, that moved us to relax

---

**3.** This void in Maryland procedure was filled in 1973 with the adoption of Maryland Rule 317, which provides for transfer of an action brought in the wrong county "if it be in the interest of justice." *See* Code (1974), § 6-104 of the Courts and Judicial Proceedings Article.

the anti-tolling rule, they do not exist here. Not only were there yet 11 days remaining before expiration of the three-year limitations period following denial of Walko's motion to intervene, but there were also 60 days during which the motion lay pending. Nevertheless, Walko offers no explanation for its failure to file a separate but timely action. That it could have done so without inconvenience to itself is apparent; the complaint which it ultimately did file varied in no material respect from the complaint which had accompanied its motion to intervene.

In addition, the policy considerations on which our established rule is founded weigh heavily against any departure in this case. If, despite the absence of a saving statute, a plaintiff were permitted to toll the statute of limitations by filing a suit which was later dismissed as being procedurally defective, he could effectively postpone the running of the statute for an indefinite period of time. Even the typical saving statute imposes a time restriction, usually one year, on the suspension of limitations.

Arguably, appellees were on notice of Walko's claim once the motion to intervene was filed. As we have indicated, however, Walko's approach to this case was hardly one of vigilance. The statute of limitations reflects a legislative judgment of what is deemed an adequate period of time in which "a person of ordinary diligence" should bring his action. *Ferrucci v. Jack*, 255 Md. 523, 526, 258 A. 2d 414 (1969); *McMahan v. Dorchester Fert. Co.*, 184 Md. at 159. The unexplained delay in bringing a timely action here hardly bespeaks the "ordinary diligence" required of one seeking to toll the statute of limitations. *Cromwell v. Ripley*, 11 Md. App. at 182. In a very real sense, Walko has slept on its rights, *Johnson v. Railway Express Agency*, 421 U. S. 454, 466, 95 S. Ct. 1716, 44 L.Ed.2d 295 (1975), and cannot be heard to complain now for its own tarriance. *See Braxton v. Virginia Folding Box Co.*, 72 F.R.D. at 126-27 (Before limitations had run, plaintiffs *successfully* intervened in pending civil rights action, but later voluntarily withdrew motion and commenced independent action seeking same relief after statutory period had expired; court held that

limitations had not been tolled by timely and successful intervention, thus barring plaintiffs' *independent* action.).

We hold, therefore, that in view of the particular facts and circumstances of this case the statute of limitations was not suspended during the pendency of the motion to intervene.

> *Question of law answered as herein set forth; costs to be paid by appellant.*