Jean F. (Kingham) MONA, et al.

v.

**CITIZENS BANK AND TRUST COMPANY OF MARYLAND, et al.**

**Civ. No. K–88–209.**

United States District Court, D. Maryland.

Aug. 5, 1992.

James E.T. Lange, Silver Spring, Md., and Jared M. Sonies, Hendon, Va., for plaintiffs.

Paul M. Nussbaum, Loretta E. Shapero, Paul W. Madden, Kenneth Oestreicher and Whiteford, Taylor & Preston, Baltimore, Md., for Ticor Title Ins. Co.

S. Kennon Scott, Charles R. Schaller and C. Edward Hartman, III, Annapolis, Md., for Citizens Bank & Trust Co. of Maryland.

Daniel J. Gillespie, Henry R. Lord, C. Lamar Garren and Piper & Marbury, Baltimore, Md., for A. Lee Haislip, Jr.

FRANK A. KAUFMAN, Senior District Judge.

In his Report and Recommendation, Judge Paul Mannes of the United States Bankruptcy Court recommended that the referral of the within case, by this Court, to the Bankruptcy Court, be withdrawn. This Court, by an Order dated November 9, 1990, withdrew that reference. This case originally involved claims brought by a bankrupt plaintiff-debtor (Jean Mona) and two other non-debtor plaintiffs against defendants Citizens Bank and Trust Company of Maryland (Citizens Bank), Daniel J. Gillespie (Gillespie), individually and in his capacity as an officer and employee of Citizens Bank, Ticor Title Insurance Company (Ticor), and A. Lee Haislip (Haislip), individually and as an agent for Citizens Bank and Ticor.[1]

At the time this Court referred the within case to the Bankruptcy Court, there were pending before this Court motions to dismiss submitted by all defendants. As one basis for said motions, defendants contended that the case involved non-core matters and that, therefore, this Court was required to abstain under applicable federal law. In the alternative, defendants urged this Court to abstain on a discretionary basis should this Court find that the case involved core matters.

The Report of the Bankruptcy Judge, although titled "Report and Recommendation of Bankruptcy Judge on Motion for Abstention," only recommended withdrawal of the reference to the Bankruptcy Court and did not address abstention issues. Therefore, under those circumstances, defendants' various motions to dismiss are pending before this Court.

Defendants have at all times urged this Court to abstain from exercising jurisdiction in this case. Jean Mona,[2] on the other

---

1. The seven-count complaint sought, in Count I, to avoid a debt resulting from judgment on a cognovit note. The remaining counts related to events leading up to the judgment upon the cognovit note and included fraud, breach of contract, breach of fiduciary duty and professional liability.

2. As will be addressed in greater detail *infra*, the two non-debtor plaintiffs were dismissed from the case pursuant to an Order issued by Judge Mannes, which Order is referenced in his Report and Recommendation. This Court hereby approves that dismissal. Those non-debtor plaintiffs have not excepted to that ruling by

hand, asserts that the issues in this case, at least as to those involving herself and defendants Citizens Bank and Gillespie, are core issues and that therefore this Court is not required to abstain. Further, Jean Mona contends that if any of her claims are non-core, this Court should not abstain, noting that she has no other forum available in which to try her contentions.

For the reasons stated *infra*, regardless of whether core or non-core issues are present, this Court will abstain.

## I.

This case involves certain property which ultimately came to be owned by Jean Mona, Joseph Mona (Jean's husband), and Matthew Kingham.[3] Some time prior to February 5, 1980, that property had been owned by Joseph Mona and his former wife, as tenants by the entireties, and by two other parties. One of those other parties transferred that party's 25% interest in the property to Joseph Mona by quitclaim deed. That quitclaim deed was not recorded. At some point, Joseph Mona's creditors obtained and recorded judgments against him, individually, in matters unrelated to the property. Apparently because the quitclaim deed was not recorded, Joseph Mona's judgment creditors did not attach his 25% individual ownership interest in the property; presumably, those creditors had no notice of his ownership of that interest.

Subsequently, Joseph Mona married Jean Mona. The Monas decided to develop the property and in 1983 sought loans from defendant Citizens Bank's predecessor in interest to do so. Joseph Mona and Jean Mona obtained a consolidation loan to pay off an already existing indebtedness to Citizens Bank's predecessor. In addition, they obtained a construction loan to develop the property. The property itself was to serve as collateral for both obligations. Because of their desire to protect that property from Joseph Mona's creditors, Citizens Bank's predecessor and the Monas decided that the property would be owned 100% by Jean Mona, in fee. That is, the tenants by the entireties' share and the remaining shares owned by another party and by Joseph Mona, individually, were to be transferred to Jean Mona. Although the record in this case is not entirely clear, it appears that the 25% interest owned by Joseph Mona individually was to be transferred to Jean Mona and then the deed showing 100% ownership in Jean Mona was to be recorded.

Due to an error, the 25% interest in the property owned by Joseph Mona, individually, was recorded—unbeknownst to the Monas. Defendant Haislip, who was at that time an officer of Citizens Bank's predecessor, acted as settlement attorney and title agent. Apparently it was defendant Haislip—or someone acting on his behalf—who recorded Joseph Mona's 25% interest in the property. The recording of Joseph Mona's 25% interest in the property made it possible for the recorded judgments against Joseph Mona to attach, at least facially, to that property. Subsequently, when the Monas attempted to sell houses which they had constructed upon the property, their efforts were thwarted because they did not have unchallenged clear title.[4]

In late 1984, Jean Mona conveyed her interest in the property to her son, Matthew Kingham, with the knowledge and consent of the Bank. In early 1985, Joseph

Judge Mannes and thus only Jean Mona's contentions are before this Court. Jean Mona, however, is seemingly pressing in this case all allegations stated by plaintiffs.

**3.** Joseph Mona and Matthew Kingham were the two non-debtor plaintiffs who filed the Complaint in this case, along with Jean Mona.

**4.** In addition to their title problems, plaintiffs' complaint alleges that Citizens Bank failed to follow the construction schedule which the Bank had developed in arranging the two loans

to Joseph Mona and Jean Mona. According to plaintiffs, construction did not start until 15 months after settlement because the Bank did not fund the loan until then. Plaintiffs state that no reason was ever given for the funding delay. In addition, plaintiffs assert that the Bank insisted that it disburse the construction costs, and promised to provide a weekly accounting of those disbursements; however, plaintiffs allege that such accounting was never submitted.

and Jean Mona executed a modification agreement pursuant to which the Bank agreed to lend an additional $60,000 for construction. Joseph, Jean and Matthew signed notes for that amount as co-makers. In August 1985, Joseph, Jean and Matthew executed a blank cognovit note as co-makers. Jean Mona alleges that Citizens Bank later entered $100,000 as the amount of the note, without any authorization from her or the other two co-makers.

Jean Mona also contends that Haislip expressed strong interest—to the point of insistence—in acting as settlement attorney for the houses being built on the property; however, the buyer of one of the houses being built used another attorney for settlement. In the course of preparing for settlement, the title defect was discovered, apparently by the buyer's attorney. Joseph Mona was advised of the defect by a real estate agent in late September 1985. Plaintiffs assert that this was the first notice of any title defect that they had received. The buyer was released from the purchase contract in late November 1985.

Jean Mona further claims that during the first week of December 1985, defendant Haislip contacted Joseph Mona and asked that Jean Mona consent to a foreclosure to "solve" the "title problem." Jean Mona alleges that defendant Gillespie also agreed that such a procedure would be beneficial and, according to Jean Mona, Gillespie termed it a "friendly" foreclosure. However, Jean Mona refused to acquiesce in the foreclosure, and on December 20, 1985, Citizens Bank foreclosed on the property. On June 27, 1986, judgment was entered on the cognovit note against all three makers in favor of the payee, in the amount of $129,370.46, with interest thereon accruing at the rate of $34.25 per day. Jean Mona states that on or about July 10, 1986, as a direct consequence of the judgment on the cognovit note, Jean Mona filed for bankruptcy under Chapter 13, which proceeding was subsequently converted to a Chapter 11 proceeding.

## II.

The complaint in this case was filed in this Court on January 26, 1988, by Jean Mona, Joseph Mona and Matthew Kingham. In March of 1988 all of defendants filed motions to dismiss, asserting *inter alia* that subject matter jurisdiction was not present as to the claims of either Joseph Mona or Matthew Kingham, and that, in addition, abstention by this Court was appropriate.

This Court held a hearing on those motions on September 19, 1988. As a threshold matter, this Court observed during that proceeding that under then-Local Rule 51,[5] cases such as this one are referred automatically to the Bankruptcy Court. Due to a clerical oversight, that referral was not made and plaintiffs' counsel had not notified the Court of that error. After the hearing, this Court did refer this case to the Bankruptcy Court.

During that September 19, 1988 hearing, certain preliminary determinations were made by this Court. Among those determinations were that plaintiffs Joseph Mona and Matthew Kingham could not pursue their claims in this Court because no independent subject matter jurisdiction existed to support their claim; and that plaintiffs' reliance upon a so-called "pendant plaintiff" basis for the grounding of such jurisdiction was without merit. In addition, this Court stated that the appropriate forum for the trial of this case was in a Maryland state court because, but for the presence of the bankrupt, Jean Mona, as plaintiff, state claims predominated and all defendants and all plaintiffs resided in the State of Maryland.

During the September 19, 1988 proceeding, this Court also referred to the issue of whether this case was core or non-core, but deferred any final determination in that regard because of the upcoming reference to the Bankruptcy Court. Nevertheless, this Court stated that if the within case were properly before this Court at that time, it would exercise its discretion to abstain under § 1334(c)(1) and that thereafter the plaintiffs could proceed in a state

---

5. Since renumbered as Local Rule 402.

court. This Court also noted that plaintiffs' attack upon the judgment on the cognovit note could not prevail because that judgment was entitled to full faith and credit.

Following referral of this case to the Bankruptcy Court, Judge Mannes met with all parties, and plaintiffs apparently agreed at that time that they would press their claims in state court. Nevertheless, plaintiffs refused to dismiss the within federal case in the event they were unable to prosecute their claim in state court for any reason. Plaintiffs filed a case—virtually identical to the within case—in the Circuit Court for Prince George's County, Maryland. Defendants, in response in that case, filed motions to dismiss, raising the statute of limitations as a bar.

Judge Rymer, sitting in the Circuit Court for Prince George's County, held that plaintiffs' claim was indeed barred by limitations. Observing that plaintiffs, by their own admission, were on notice at least as early as September 25, 1985 that title defects existed on the property and that plaintiffs could not convey marketable title, Judge Rymer reasoned that such notice would have caused a reasonable person to investigate the defect and to protect his or her interests. In addition, Judge Rymer concluded that plaintiffs had admitted that defendants Haislip and Gillespie contacted them concerning the pending foreclosure in early December 1985, that plaintiffs' property was foreclosed upon on December 20, 1985, but that, nevertheless, plaintiffs did not file a revisory motion with regard to that foreclosure.

Judge Rymer also concluded that plaintiffs knew that the Bank was behind in its construction funding in November 1984, that plaintiffs were incurring money damages as a result, and that plaintiffs knew in late 1984 and in 1985 that the Bank was not filing weekly accountings of disbursements even though plaintiffs had made repeated requests to receive such accountings. Further, plaintiffs had sought no relief in any court until they instituted the within federal case in January 1988. Judge Rymer noted that each of the acts and omissions relied upon by plaintiffs to support their fraud, breach of contract, and breach of fiduciary duty causes of action (as well as others pleaded by them), occurred during the period 1983 to December 1985.

Judge Rymer determined that each of plaintiffs' causes of action was time-barred in the state court case before him which was commenced on April 6, 1989. Judge Rymer—applying Maryland's three-year statute of limitations—stated that plaintiffs' claims were stale at the latest by December 20, 1988. Judge Rymer also commented that plaintiffs' attack upon the money judgment on the cognovit could not succeed because the issues involved were settled when the December 20, 1985 judgment was entered, that judgment was not timely attacked, and that judgment collaterally estopped plaintiffs from attacking the judgment on the cognovit note. In addition, because Judge Rymer was persuaded that plaintiffs had knowledge of the foreclosure action and the entry of the cognovit note, plaintiffs could not meritoriously assert the existence of the type of extrinsic fraud which might enable them to set aside those judgments.

Plaintiffs appealed from Judge Rymer's aforementioned determinations to the Court of Special Appeals of Maryland, arguing that their filing of the within case in federal court in January 1988—before the running of Maryland's period of limitations—had tolled limitations. The latter court, in an unreported opinion, rejected that argument, observing that Maryland strictly construes its statutes of limitations. *See Mona v. Citizens Bank & Trust Co. of Md.*, No. 86, slip op. at 6 (Md.Ct.Spec.App. Oct. 24, 1990). In so doing, the Court of Special Appeals wrote that "[i]t is now well settled in Maryland that the mere filing of an action in one jurisdiction does not toll the statute of limitations with respect to a second action, involving the same claim, filed in another jurisdiction." *Id.*, slip op. at 5 (citing *Walko Corp. v. Burger Chef Sys., Inc.*, 281 Md. 207, 378 A.2d 1100 (1977)). Plaintiffs petitioned the Court of Appeals of Maryland for certiorari, which that court granted. However, that court

later withdrew that grant as having been improvidently granted, *see Mona v. Citizens Bank & Trust Co. of Md.*, 323 Md. 26, 590 A.2d 548 (1991), and subsequently denied plaintiffs' motion for reconsideration.

### III.

Following the adverse decision in the Circuit Court for Prince George's County, plaintiffs returned to the Bankruptcy Court. In a hearing on June 13, 1990, Judge Mannes, after reviewing the history of this case, dismissed the two non-debtor plaintiffs, concluding that there was no subject matter jurisdiction for their complaint. In so doing, Judge Mannes stated that he found it inconceivable that the outcome of the claims of Joseph Mona and Matthew Kingham against defendants could have had any effect upon the bankruptcy estate of Jean Mona, citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984).

Judge Mannes also stated that the within case was a non-core, "related-to" case, with the exception of the claims by Jean Mona against defendant Citizens Bank. The claims against the remaining defendants were deemed to be non-core. Judge Mannes observed that in non-core cases, under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (per curiam), and absent agreement by all parties, a Bankruptcy Court may only make proposed findings of fact and conclusions of law. Also, Judge Mannes noted that the jury trial elected by plaintiff Jean Mona rendered the Bankruptcy Court unable to handle the case and that "the de novo review [by the District Court] that is part and parcel to the grant of jurisdiction to the Bankruptcy Court is absolutely incompatible with the Seventh Amendment." In sum, Judge Mannes concluded that he would enter a Report and Recommendation that the district court withdraw the reference of plaintiff's claims.

Judge Mannes further stated: "I will likewise report and recommend under Section 1334[ (c) ](2) [mandatory abstention] that the ... District Court abstain from the exercise of jurisdiction." Judge Mannes found that the requirements under Section 1334(c)(2) had been met. He noted, however, "in as much as this decision by the terms of 1334(c)(2) is not reviewable by appeal or otherwise, it would be inappropriate for a Bankruptcy Judge to enter such an order and that is why the matter goes up to the District Court as a report and recommendation."

In the Report and Recommendation of the Bankruptcy Judge, Judge Mannes addressed only his dismissal of Joseph Mona's and Matthew Kingham's claims and the constitutional incompatibility of a jury trial with the statutory bankruptcy scheme in which the district court is empowered to undertake *de novo* review of the proposed findings of fact and conclusions of law made by the Bankruptcy Judge. In that regard, Judge Mannes stated on the record during the June 13, 1990 hearing that he would recommend that this Court abstain under Section 1334(c)(2); however, although the caption of the Report and Recommendation referred to the Motion for Abstention, no such recommendation was included in the text of Judge Mannes' Report and Recommendation. Notwithstanding that omission, none of defendants filed any timely objection to the said Report and Recommendation.

### IV.

■ Title 28, Section 1334(c)(2) of the United States Code requires this Court to abstain from exercising jurisdiction in certain actions related to a bankruptcy proceeding but involving state law claims, i.e., non-core claims. That section provides, in relevant part:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely

adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. 28 U.S.C. § 1334(c)(2) (Supp. II 1990). "Section 1334(c)(2) provides for mandatory abstention in those cases where (1) the action is only related to a bankruptcy; (2) the action could not be brought in federal court absent its relatedness to a bankruptcy; and, (3) the action can be timely adjudicated in state court." *Allen County Bank & Trust Co. v. Valvmatic Int'l Corp.*, 51 B.R. 578, 583 (N.D.Ind.1985).

All parties agree that plaintiff's claims against defendants other than Citizens Bank, and Gillespie in the latter's capacity as an officer or employee of that Bank, are non-core and that mandatory abstention is appropriate if the requirements for such abstention are met. Jean Mona asserts, however, that because her claims have been determined to be time-barred in the state forum, this Court must retain jurisdiction because it is now the only forum which is available to her. Defendants, in response, assert that the availability of the state forum should be determined from the circumstances as they existed on the date upon which Jean Mona filed her complaint in this Court, noting that the existence of federal jurisdiction based upon diversity, for example, is determined upon the facts as they existed at the time a complaint is filed. *See, e.g., Mollan v. Torrance,* 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824) (Marshall, J.) ("It is quite clear, that the jurisdiction of the court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events.")

Defendants candidly admit that they have found no case precisely on point in that regard, nor has this Court found any such case. However, this Court need not, under the circumstances as they exist in this case, look to the facts as they existed in January 1988 when Jean Mona filed her complaint. Rather, this Court can look to all that has occurred before, during and following the hearing held in this Court on September 18, 1988.

During that hearing, this Court advised counsel for Jean Mona in the strongest possible terms that the proper forum for her claims was a Maryland state court, observing that, if the case were, at that time, properly before this Court, this Court would abstain from exercising jurisdiction. Thus, Jean Mona was on notice that this Court did not expect to exercise jurisdiction and that this Court was of the opinion that she and the other plaintiffs should proceed in state court. Those statements were made by this Court in open court upon the record in September 1988, well before the December 1988 date determined by Judge Rymer to be the date upon which the statute of limitations had run.

To permit a plaintiff to forego an available forum until after limitations have run in that forum and then to raise that lack of an alternative forum as a bar to a federal court abstaining from exercising its jurisdiction on a mandatory or discretionary basis, speaks for itself. By analogy, that is why post-filing changes in the jurisdictional context cannot operate to defeat diversity jurisdiction, for example, by a party's change of domicile subsequent to the filing of a complaint. As stated in *Johnson v. Burken,* 930 F.2d 1202, 1205 (7th Cir.1991), the reason post-filing events do not affect jurisdiction "is that, if they did, this would be an invitation to strategic behavior."

Jean Mona may have believed—as she argued in the Court of Special Appeals of Maryland—that by filing her case in this Court in January 1988, Maryland's statute of limitations had been tolled; however, the Court of Special Appeals of Maryland has determined to the contrary. Jean Mona could easily have protected herself from the effect of such a ruling by filing a state court case while she proceeded before Judge Mannes but she did not do so.

## V.

■ Jean Mona asserts that her claims against the Bank and defendant Gillespie,

in his capacity as an officer and employee of the Bank, are core claims; defendants contend that even those claims are non-core. In the case of core claims, this Court is not required to abstain, but may exercise its discretion to do so. Title 28, Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1) (1988).

The Bankruptcy Code defines core proceedings only by example. *See* 28 U.S.C. § 157(b)(2) (1988). That section contains a non-exhaustive listing of proceedings affecting the bankrupt estate which are deemed to be core. As one commentator has pointed out:

> When one looks at the list of what is and what is not a core proceeding under the Code, it is clear that, as a general rule: (1) a matter that arises directly in a bankruptcy case under bankruptcy law is a core proceeding, and (2) a matter that arises under nonbankruptcy law and happens to be of issue in a bankruptcy case merely because one of the parties to the dispute is the debtor in the bankruptcy case usually is not a core proceeding.

Robert E. Ginsberg, *Bankruptcy* ¶ 1123, at 1035 (Supp.1988). Section 157(b)(2)(B) provides that allowance or disallowance of claims against the estate is a core matter. Likewise, section 157(b)(2)(C) provides that counterclaims by the estate against persons filing claims against the estate are core matters. Defendant Citizens Bank filed two proofs of claim against the estate in the bankruptcy proceeding: one on the cognovit note and the other on the secured bank loans. Jean Mona did not file an objection to those proofs of claim in the bankruptcy court. Instead, she elected to file the instant suit in this Court. Plaintiff's within suit apparently attempts to state a counterclaim by the bankrupt estate against Citizens. In that regard, Jean Mona in Count I of her complaint attacks the validity of the cognovit judgment, alleging that the judgment was fraudulent.

Even if this Court were to determine that any claim or any counterclaim involving the estate of Jean Mona in bankruptcy, Citizens Bank or Gillespie is a core matter, that determination would not afford plaintiff any relief. That is because the entry of judgment on the cognovit note was a final judgment to which this Court must give full faith and credit, particularly since, as Judge Rymer observed in his Opinion and Order dismissing plaintiff's identical state court suit, plaintiff had notice of the entry of the judgment upon the cognovit note in June 1986 and did not challenge such entry.

## VI.

In summary, Jean Mona—and all of plaintiffs—were put on notice by this Court as early as September 18, 1988, that this Court was of the view that plaintiff's claims properly belonged in state court and that this Court expected—regardless of whether plaintiff's claims were core or non-core—to abstain from exercising jurisdiction. Thus, to the extent that all of Jean Mona's claims are deemed to be non-core, with abstention being mandatory, plaintiff is not permitted to obliterate the statute's mandatory abstention prescription by waiting until limitations have run barring a state court action and then pleading the lack of a state forum as a bar to this Court's mandatory abstention. On the other hand, if any of Jean Mona's claims are deemed to be care, plaintiff cannot be permitted to obliterate this Court's discretion to abstain from exercising jurisdiction by relying upon such lack of a state forum. Finally, even if plaintiff's claim were to be deemed core and if it were determined that abstention was inappropriate, this Court would be bound to give the judgment of the state court on the cognovit note full faith and credit.

For the reasons stated herein, this Court will enter an Order of even date herewith abstaining from the exercise of its jurisdiction pursuant to the provisions of 28 U.S.C. § 1334(c)(1) and/or § 1334(c)(2) and enter-

ing judgment against all plaintiffs and in favor of all defendants without prejudice.

## ORDER

This Court hereby abstains from the exercise of such subject matter jurisdiction in this case as may exist, and hereby enters judgment against all plaintiffs and in favor of all defendants, without prejudice. It is so ORDERED, this 5th day of August, 1992.