625 A.2d 404

Lois T. NIXON

v.

STATE of Maryland.

No. 1615, Sept. Term, 1992.

Court of Special Appeals of Maryland.

June 4, 1993.

486

Glen M. Fallin, Westminster, for appellant.

Susan C.M. Somerville, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Andrew M. MacDonald, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BISHOP, GARRITY and CATHELL, JJ.

CATHELL, Judge.

Appellant, Lois T. Nixon, appeals from an order of the Circuit Court for Howard County in favor of the State of Maryland, appellee. Appellant presents four questions which we rephrase as follows:

I. Did the trial court err in finding that appellant and her "comparator" did not perform work of comparable character or comparable skill?

II. Did the trial court correctly find that the State met its burden in establishing that the salary differentials were based upon a merit system which does not discriminate on the basis of sex?

III. Did the trial court err in finding that all claims arising more than three years prior to the filing of the instant case were barred by the statute of limitations contained in Annotated Code of Maryland, section 3–307(c) of the Labor and Employment article? [1]

IV. If this case is remanded, should the appellee be equitably estopped from attempting to introduce evidence concerning the setting of pertinent salaries in 1973?

## Facts

Appellant began her employment as an instructor with Coppin State College (hereinafter "Coppin") in 1971. She testified that she was told by Coppin that she would not be promoted until she received a doctorate degree. Appellant further testified that prior to her enrollment in the doctoral program of Union Graduate School (hereinafter "Union"), she had received written assurance from Dr. Calvin Burnett at Coppin that her degree from Union would be "accepted." Union was unaccredited at the time appellant enrolled and remained unaccredited until 1985. In 1977, appellant received

---

[1]. Since the filing of this claim, the Legislature has recodified Article 100, sections 55A–55H, Equal Pay for Equal Work, as Subtitle 3 of the Labor and Employment Article, Equal Pay for Equal Work (hereinafter "Maryland Equal Pay Act"). Unless otherwise indicated, the sections referred to were recodified without substantive change.

a doctorate degree from Union and was promoted to assistant professor.[2] Since the time that Dr. Burnett assured appellant in 1971 that her degree from Union would be "accepted" at Coppin, the Board of Trustees changed their policy regarding promotions and degrees from institutions that were unaccredited and refused to accept degrees from unaccredited institutions for promotional purposes in respect to associate or full professorships.

Colonel T. Hawkins was hired by Coppin as an assistant professor in 1973. At that time he did not have a doctorate degree, but he had completed two years in a doctoral program at the University of Pittsburgh, an accredited institution. He was also working on a doctoral dissertation and had taught classes for one year at Bowie State College. Dr. Hawkins was promoted to associate professor in 1983 upon the receipt of his doctorate degree.

Appellant filed a request for promotion to associate professor in 1982, which was denied because Union remained unaccredited. Coppin, however, did promote appellant to associate professor upon Union's accreditation in 1985.

Appellant filed the present suit alleging a violation of Maryland's Equal Pay for Equal Work Act (Maryland Act)[3] on September 8, 1987. The Maryland Act generally prohibits gender-based wage discrimination between employees of different sexes. It contains exceptions relating to seniority, shifts, merit systems, ability, and work classifications. Generally, appellant alleged discrimination based on her perception of the higher salary of Dr. Hawkins, alleged by her to be doing work of comparable character. On June 27, 1992, the court granted, in part, the State's motion for summary judgment and dismissed appellant's claims arising out of conduct by the State that did not occur within three years prior to the

2. Assistant professor is a position below the level of associate professor.

3. There is a comparable federal statute—the Federal Equal Pay Act 29 U.S.C. section 206 (1992). While appellant relies on certain federal cases interpreting the federal statute, the present case was filed solely under the Maryland Act.

filing of her complaint. On July 8, 1992, a court trial was held on the remaining claims. During the trial, the trial court prevented appellant from introducing evidence regarding the hiring and promotion requirements to assistant professor for the 1973 year. The court entered judgment in favor of appellee, opining:

> I don't find that Dr. Hawkins and the Plaintiff performed work of comparable character.... [B]ut even assuming for the sake of argument, that they do ... perform comparable work requiring comparable skills, clearly I find by a preponderance, that the State has established by a preponderance of the evidence that the salary differential is based on a provision of the statute, one of the exceptions of the statute. That it's clearly based, evaluation or variation in salary is based upon a merit system.... [T]hat doesn't discriminate on the basis of sex.

We affirm the trial court. We shall supply further facts as necessary.

## I.

Appellant argues that the trial court erred in finding that she and Dr. Hawkins did not perform work of comparable character or comparable skill. We hold that the evidence presented in this case clearly supports the judgment of the trial court.

The standard of review for court trials is well-established. Maryland Rule 8–131(c) provides that in an action tried without a jury, an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *See also Reisterstown Plaza Assocs. v. General Nutrition Ctr., Inc.,* 89 Md.App. 232, 240, 597 A.2d 1049 (1991). "Unless the factual findings of the trial court are clearly erroneous, an appellate court may not arrive at different factual conclusions. If there is any competent material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly errone-

ous." *Fantasy Valley Resort, Inc. v. Gaylord Fuel Corp.*, 92 Md.App. 267, 275, 607 A.2d 584 (1992) (citation omitted).

Appellant contends in her brief that:

What is significantly different about the Maryland Act, if it is analyzed according to the federal model, is that a *prima facie* case is made out by a showing of "work of comparable character or work on the same operations, business or type of work in the same establishment", while the *prima facie* case under the federal EPA requires "*equal* skill, effort, and responsibility". The Maryland Act, by contrast, appears to allow the defendant employer to defeat the claim by showing that the subject work requires "different skill or ability, different duties or services performed regularly".

Appellant argues that she has made a *prima facie* showing of work of comparable character as required by the Maryland Equal Pay Act. Md.Code Ann., Lab. & Emp. § 3–304 (1991). She further contends that appellee has failed to rebut her *prima facie* showing. We hold that appellant failed to establish a *prima facie* case under the Maryland Act. We explain.

The Maryland Equal Pay Act provides as follows:

(a) *In general.*—An employer may not discriminate between employees in any occupation by paying a wage to employees of 1 sex at a rate less than the rate paid to employees of the opposite sex if both employees work in the same establishment and perform work of comparable character or work on the same operation, in the same business, or of the same type.

(b) *Effect of requirement.*—Subsection (a) of this section does not prohibit a variation in a wage that is based on:

(1) a seniority system that does not discriminate on the basis of sex;

(2) a merit increase system that does not discriminate on the basis of sex;

(3) jobs that require different abilities or skills;

(4) jobs that require the regular performance of different duties or services; or

(5) work that is performed on different shifts or at different times of day.

Lab. & Emp. § 3–304(a) and (b).

Appellant relies extensively on the federal case interpretations as persuasive authority for her contentions as to the alleged violations of the Maryland Act. The standard for establishing a *prima facie* case under the Federal Equal Pay Act is well-settled:

> [T]he plaintiff is required to prove at trial "that an employer pays different wages to employees of opposite sex 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"

*Schwartz v. Florida Bd. of Regents,* 954 F.2d 620, 623 (11th Cir.1991) (quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974), quoting 29 U.S.C. § 206(d)(1)).

> "Once the plaintiff has established a prima facie case, the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions to the Equal Pay Act: (i) a seniority system; (ii) a merit pay system; (iii) a system which measures earnings by a quantity or quality of production; or (iv) a differential based on any factor other than sex. If the employer establishes that the disparity is justified by one of these exceptions then the plaintiff must come forward with affirmative evidence that indicates that the proffered reason for the disparity is actually a pretext for sex discrimination."

*Schwartz,* 954 F.2d at 623 (quoting *Brock v. Georgia Southwestern College,* 765 F.2d 1026, 1036 (11th Cir.1985)) (citation omitted).

In *Schwartz,* a male professor who taught courses in the College of Education at Florida State University filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et seq.,* and the Federal Equal Pay Act. He alleged that female professors in the same department were paid a higher salary than comparable male professors because

the male professors were not permitted to participate in a certain academic study. The Court held that the District Court's finding that the salary disparity resulted from factors other than sex was not clearly erroneous. 954 F.2d at 623. The discretionary raises were based upon certain factors: "outstanding service to the university, administrative duties, publications, research, supervision of doctoral students, and performance." 954 F.2d at 623. The Court further held that the plaintiff was not entitled to relief under Title VII because even if he had been allowed to participate in the academic study, he would not have received a pay adjustment because his salary differential was not the result of sex discrimination. 954 F.2d at 624. *See also Brock,* 765 F.2d at 1033–34 (holding "that plaintiff can meet its burden of going forward by showing that the teachers compared are in the same discipline and that their job is to teach classes to students in that discipline.") (footnote omitted); *Hassman v. Valley Motors, Inc.,* 790 F.Supp. 564, 568–69 (D.Md.1992) (holding that where evidence supported conclusions that male co-workers of female claimant performed duties requiring greater skill and responsibility, that her male counterparts were significantly more experienced and qualified, and where defendant established a legitimate non-discriminatory reason for the wage differential and plaintiff failed to show by a preponderance of the evidence that the proffered excuse was pretextual, plaintiff's claims under the sex discrimination provisions of Title VII, the Federal Equal Pay Act, *and* the Maryland Equal Pay Act were without merit).

In the case *sub judice,* appellant failed to establish a *prima facie* showing that her duties required equal skill, effort, and responsibility. Moreover, she failed to make a *prima facie* showing that she and Dr. Hawkins performed work of comparable character. At trial, appellant testified on her own behalf and called only one witness, Dr. Hawkins. She testified regarding her qualifications, duties, and responsibilities as an employee of Coppin. Since 1984, appellant testified (1) that she had taught six to eight undergraduate and graduate courses in the Special Education Department; (2) that she had

served on several college-wide committees; (3) that she had been involved in community activities with the Baltimore City Public Schools; (4) that she had *never* published a single academic paper or article while employed at Coppin; (5) that she was *not qualified* to teach in the Department of Health and Physical Education; (6) that she did not feel that she had the expertise to teach two courses in Special Education, Measurement and Evaluation; (7) that Dr. Hawkins had split his time teaching in the Departments of Special Education and Health and Physical Education, and (8) that Dr. Hawkins was involved in grant research.

The State called Dr. Hawkins, President Calvin W. Burnett, and Dr. George Taylor as witnesses. Dr. Hawkins testified (1) that he had taught courses in the Special Education Department, including Measurement and Evaluation; (2) that he had taught courses in the Department of Health and Physical Education; (3) that his work included an assignment to the Office of Institutional Research to do research for grants, and (4) that he has authored or co-authored nine published papers while employed at Coppin.

When asked at trial which skills were required for Dr. Hawkins's job that were not required for appellant's, Dr. Taylor testified (1) that appellant had not received any instruction on the graduate level in measurement and evaluation; (2) that Dr. Hawkins had done a considerable amount of grant writing, had coordinated those grants, and was responsible for at least two or three grants in Special Education, and (3) that appellant had no training in the field of Health and Physical Education and was therefore not qualified to teach in that department.

Clearly, appellant's work was not of comparable character. Nor did their jobs require equal skill, effort, or responsibility. Dr. Hawkins was qualified to teach in two departments, while appellant was qualified to teach in only one. Dr. Hawkins was involved in coordinating research grants and authored or co-authored numerous academic publications, whereas appellant

had no involvement in either activity. The trial court did not err in finding that their work was not of comparable character.

## II.

■ Appellant argues that "[t]he trial court erred in concluding that the wage disparities complained of resulted from the permissible, operation of Defendant's merit system."

The trial court's finding that the State established by a preponderance of the evidence that the pay disparity was based upon a merit system that did not discriminate upon the basis of sex cannot be reversed on appeal unless clearly erroneous. Md.Rule 8–131(c); *Fantasy Valley,* 92 Md.App. at 275, 607 A.2d 584; *Reisterstown Plaza,* 89 Md.App. at 240, 597 A.2d 1049. We hold that the evidence before the court clearly supports its finding that the salary disparities were based upon a merit system that did not discriminate on the basis of sex.

As previously stated, the Maryland Equal Pay Act provides the following exceptions for wage disparities:

(b) *Effect of requirement.*—Subsection (a) of this section does not prohibit a variation in a wage that is based on:

(1) a seniority system that does not discriminate on the basis of sex;

(2) a merit increase system that does not discriminate on the basis of sex;

(3) jobs that require different abilities or skills;

(4) jobs that require the regular performance of different duties or services....

Lab. & Emp. § 3–304(b).

President Burnett testified (1) that the method of setting faculty salaries is based upon written guidelines promulgated by the Board of Trustees of the State Universities and Colleges of Maryland; (2) that he does not have the power to deviate from the Board of Trustees' requirements; and (3) that the Coppin State College Appointment Rank and Tenure (A.R.T.) document contained a paragraph describing the merit

pay system as well as the written criteria used in the compensation and promotion of faculty at Coppin during the period in question.

Dr. George Taylor testified regarding the merit pay criteria and procedures for promoting faculty employees at Coppin. The criteria included: "teaching, *scholarly research,* service in department division, college at large, [service] on community councils, *scholarly presentations* and *continuing their scholarly preparation."* (Emphasis added). He further testified that appellant applied for a promotion and a merit pay increase for the 1985–86 and 1986–87 years, but her application was disapproved because she had not met the scholarly research component. Specifically, "[s]he had not published...." Significantly, Dr. Hawkins's 1986–87 application for a merit pay increase was also denied because at that time *he had not published* and had not been active in professional organizations.

The criteria used in awarding merit pay for the 1987–89 years was based on the criteria discussed above, but also required *"documented evidence* of outstanding performance and demonstrated excellence, in three or more of the following areas.... [T]eaching ... *scholarly research* and creative productions ... service in professional scholarly organizations ... service on Community Council Boards ... *scholarly presentations* ... [and] *continuing scholarly preparation enhancement."* (Emphasis added.) Dr. Taylor again testified that appellant's request for a merit pay increase for the 1987–88 years was denied because "[s]he had not met the published criteria.... She did not meet the publication, service in department, division, college at large. She did not meet scholarly presentation to community groups, nor scholarly preparation. She did not meet teaching and service on community board." Appellant's request for merit pay for the 1988–89 years was denied for the same reasons.

Regarding appellant's applications for merit pay increases over the years, Dr. Taylor further commented:

> Well in my opinion, as I had indicated, Dr. Nixon's teaching skills are superb and if promotion and merit pay

was based solely upon those, that factor, she would, she would have been promoted. If one looks at Dr. Hawkins' publications and involvement in professional societies and meetings, as well as his publication, we would have to tilt the scales in his favor when it came to academic preparations.

When asked why appellant was not granted a merit pay increase when the A.R.T. in effect during the times in question "simply stated you had to meet three" criteria, Dr. Taylor responded: .

.... [I]t's a weighted scale and you need at least fifty points and I think teaching is forty and you have to pick up ten points otherwise. And—

Q. What factor in the A.R.T. policy would she not have fulfilled in her—

A. Publications, community involvement, professional organizations and. so forth.

Q. In your consideration of the criteria under the A.R.T. policy and evaluating Dr. Nixon's application for merit and promotion, what factor did gender, did gender play in your evaluation?

A. None.

The evidence before the trial court clearly supports its finding that the merit system was based on criteria that did not discriminate on the basis of sex. Appellant consistently failed to satisfy the requirements set by the Board of Trustees for academic publication and community involvement. These requirements were expressly set out in the A.R.T. document and faculty handbooks for the years in question. Therefore, the finding of the trial court was not clearly erroneous.

## III.

An action arising under the Maryland Equal Pay Act "shall be filed within 3 years of the act on which the action is based." Lab. & Emp. § 3–307(c).

Appellant contends that it was error for the trial court to grant summary judgment on all claims that arose more than three years prior to the filing of the instant case because of the "undisputed failure" of appellee to post notice of the Maryland Equal Pay Act. The statute provides that: "Each employer shall keep posted conspicuously in each place of employment a copy of this subtitle." Lab. & Emp. § 3–306(b).[4] She bases this claim only on her assertion that she did not remember having seen a notice posted. Appellee, however, claimed that it was without sufficient knowledge to answer this question in its answers to interrogatories. Such an answer has the effect of a denial. Md.Rule 2–323(c); *Salisbury Beauty Sch. v. State Bd. of Cosmetologists,* 268 Md. 32, 39, 300 A.2d 367 (1973). Thus, in the first instance, appellant failed to establish her burden of proof that notice was not posted.

In reviewing the grant of a summary judgment motion, we are concerned with whether a dispute of material fact exists. *Arnold Developer, Inc. v. Collins,* 318 Md. 259, 262, 567 A.2d 949 (1990); *Bachmann v. Glazer & Glazer, Inc.,* 316 Md. 405, 408, 559 A.2d 365 (1989); *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Markey v. Wolf,* 92 Md.App. 137, 170–71, 607 A.2d 82 (1992). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King,* 303 Md. at 111, 492 A.2d 608 (citing *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974)). "A dispute as to a fact 'relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment.' " *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242–43, 603 A.2d 1357 (1992) (quoting *Salisbury,* 268 Md. at 40, 300 A.2d 367). We further opined that in order for there to be disputed facts sufficient to render summary judgment inappropriate, "there must be evidence on which the jury

---

**4.** This section was derived from former Article 100, section 55F, without substantive change.

could reasonably find for the plaintiff." *Seaboard,* 91 Md.App. at 244, 603 A.2d 1357.

■ The Court of Appeals has recently stated that "the proper standard for reviewing the granting of a summary judgment motion should be whether the trial court was legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 592, 578 A.2d 1202 (1990) (citations omitted). The trial court, in accordance with Maryland Rule 2–501(e), shall render summary judgment forthwith if the motion and response show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact that is sufficiently material to be tried. *See Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564 (1981); *Berkey v. Delia,* 287 Md. 302, 304, 413 A.2d 170 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment,

> [i]t is ... incumbent upon the other party to demonstrate that there is indeed a genuine dispute as to a material fact. He does this *by producing factual assertions, under oath,* based on the personal knowledge of the one swearing out an affidavit, giving a deposition, or answering interrogatories. "Bald, unsupported statements or conclusions of law are insufficient."

*Lowman v. Consolidated Rail Corp.,* 68 Md.App. 64, 70, 509 A.2d 1239, *cert. denied,* 307 Md. 406, 514 A.2d 24 (1986) (emphasis added) (citation and emphasis omitted). With these considerations in mind, we turn to the case *sub judice.*

■■ Appellant argues in her brief that "the court ignored ... a substantial body of federal authorities that permit equitable tolling of the period for filing a charge of discrimination when an employer fails to post the notice of the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–10, and the Age Discrimination in Employment Act ("A.D.E.A."), 29 U.S.C. 621, *et seq.*" We first respond by

noting again the apparent failure of proof as to the posting issue. Our review of the relevant federal case law reveals that appellant has largely misstated that law.[5] We explain.

First, we review the applicable case law regarding the notice requirements of Title VII and the Federal Equal Pay Act. It has been held that the sex discrimination provisions of Title VII and the Federal Equal Pay Act are to be construed in harmony, each requiring the same burden of proof for a *prima facie* case of discrimination and affording the same four affirmative defenses. *Hassman v. Valley Motors, Inc.*, 790 F.Supp. 564, 568 (D.Md.1992). Title VII provides as follows:

> (a) Every employer, employment agency, and labor organization as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the [Equal Employment Opportunity] Commission setting forth excerpts from or, summaries of, the pertinent provisions of this title [42 USCS §§ 2000e et seq.] and information pertinent to the filing of a complaint.

42 U.S.C. § 2000e–10(a) (1978).

In *Polsby v. Chase*, 970 F.2d 1360 (4th Cir.1992) (United States appeal pending), the plaintiff brought suit against various individuals at the National Institute of Health ("NIH") and the Department of Health and Human Services ("HHS") alleging sex discrimination under Title VII. The plaintiff had consulted a person who she mistakenly believed was an Equal Employment Opportunity (hereinafter "EEO") counselor. The person failed to inform her that under the regulation in effect at that time, her complaint must be brought to the

---

**5.** We note that Maryland has not adopted the equitable tolling doctrine which has been applied in the federal cases.

We further note that even if Maryland had adopted the equitable tolling doctrine, the trial court properly granted the summary judgment motion because appellant had knowledge of her rights well before the filing of her suit and she failed to establish that her employer intentionally misled her regarding her rights so that she would delay filing her claim.

attention of an EEO counselor within thirty days after the alleged violation. She had also consulted an attorney who erroneously informed her that she had six months to file her discrimination claim before it would be barred under the statute. Polsby claimed that she was not informed of the requirement to bring her claim to the attention of an EEO counselor within thirty days; however, she did not know whether NIH had posted notice of the statutory time limit.

Stating that there was no dispute as to whether the plaintiff failed to bring her claim within the statute of limitations, the court opined that "[t]he issue is whether Polsby is entitled to equitable relief to allow her to proceed despite this failure." 970 F.2d at 1363. In discussing the matter of equitable tolling of the statute, the Court opined:

> "The Supreme Court has recently stated: Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."

970 F.2d at 1363 (quoting *Irwin v. Veterans Admin.*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

> The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or actions that the employer should unmistakably have understood that would cause the employee to delay filing his charge.

970 F.2d at 1363 (quoting *Price v. Litton Business Sys.*, 694 F.2d 963, 965–66 (4th Cir.1982)). "Equitable relief is reserved for only the most deserving complainants." 970 F.2d at 1363. The Court ultimately held that equitable tolling was not warranted in Polsby's case because (1) she failed to exercise

due diligence; (2) her allegations that she did not know what was posted and that she believed no notice existed did not prove that NIH failed to post notice of the time limit for filing a claim, and (3) she failed to make a claim that the defendants caused her to assume that the person she initially consulted was an EEO counselor. 970 F.2d at 1363–64. *See also Olson v. Mobil Oil Corp.,* 904 F.2d 198, 201 (4th Cir.1990) (holding that limitations period under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(d) (hereinafter "ADEA"), was not equitably tolled where employee was aware of information needed to file a timely discrimination charge and employer had not taken any action to mislead employee into delaying the filing of his claim); *English v. Pabst Brewing Co.,* 828 F.2d 1047, 1049–50 (4th Cir.1987), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988) ("Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.... In the present case, we believe the district court properly rejected plaintiff's argument that the statutory limitations period should be equitably tolled based on the defendant's noncompliance with the posting requirement.") (citations omitted); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 108–11 (2d Cir.1978) (holding that even though the issue of whether tolling of time limitation for Title VII discrimination cases was still open for decision in the Second Circuit, "it does not follow that [defendants's failure to post the statutory notices required by Title VII] prevented Smith from learning of the existence of EEOC or the benefits of its administrative procedures.... Smith's claim that he had no knowledge of the EEOC because of appellees' failure to post notices, a claim not made, as we have indicated, until 6 years after the event, does not in our view allege misleading, fraudulent or deceptive conduct by the appellees sufficient to permit tolling here."); *Bartlett v. Fruehauf Corp.,* 642 F.Supp. 954, 957 (W.D.N.C.

1986) (holding that there were no exceptional circumstances in the case to invoke the doctrine of equitable tolling under the ADEA especially in light of the fact that the claimant was aware of the time limit after consulting his attorney). *Cf. Vance v. Whirlpool Corp.*, 716 F.2d 1010, 1013 (4th Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984) (holding that the limitations period under ADEA was equitably tolled because the employer's failure to post notice in accordance with Title VII prevented the employee from learning of his rights under ADEA at the time of his discharge, and when the employee later saw the notice, the limitations period had already run); *Llewellyn v. Celanese Corp.*, 693 F.Supp. 369, 379 (W.D.N.C.1988) (holding that in sexual harassment and unlawful sex discrimination case, the defendant's failure to post filing requirements of EEOC *and* the plaintiff's mentally disabled condition as a result of harassment, *i.e.*, three-year medical leave requiring treatment for depression and anxiety, justified doctrine of equitable tolling of statute).

The Fifth Circuit has taken a similar view of the application of equitable tolling of statutes of limitation. In *Cruce v. Brazosport Indep. Sch. Dist.,* 703 F.2d 862, 864 (5th Cir.1983), a female physical education teacher for girls alleged that the school district discriminated against her on the basis of sex by hiring a male Coordinator of Women's Athletics. The plaintiff sought redress through the Texas State Teachers Association (hereinafter "TSTA"). Thirteen months after the hiring of the male coordinator, plaintiff filed suit in the District Court. She based her equitable tolling argument solely on the school's failure to post any notice of EEOC procedures and on her ignorance of her rights. 703 F.2d at 864. The Court stated that the facts that the plaintiff presented were insufficient to support equitable tolling because she made no allegation that the school board (1) misled her concerning her rights under Title VII, or (2) misrepresented any facts which would support her cause of action. Since the plaintiff had been represented earlier in the TSTA proceedings, the Court stated that "the facts here strongly suggests that plaintiff had ample opportu-

nity to learn of the existence of the EEOC and its procedures" prior to the running of the limitation period. 703 F.2d at 864. The Court ultimately held that equitable tolling of the statute for failure to post as required by Title VII would not be awarded where there was nothing in the record to suggest (1) that the plaintiff was prevented from asserting her rights; (2) that she was knowingly misled by the defendant, and (3) that she relied on such knowing misrepresentation. 703 F.2d at 864.

There is nothing in the record of the case *sub judice* to suggest that appellee did anything to prevent appellant from learning of her rights under the Federal or Maryland Equal Pay Acts, that appellee did anything to mislead appellant regarding her rights under those Acts, or that appellee misrepresented any facts regarding a possible claim appellant may have had for sex discrimination. Appellant made no cognizable claim to the contrary in her opposition to the motion for summary judgment.

Appellant submitted her affidavit in support of her opposition to the motion for summary judgment, which clearly established that she was most likely aware of her rights under the Acts well before 1987 when she filed this suit. After being denied her request for promotion to assistant professor in 1982, appellant met with Dr. Burnett and informed him "that I was aware of a fellow colleague who was hired in 1981 as a full professor having received a Ph.D. after I received mine from the Union School." In 1985, she contacted Dr. Richard Bright, President of Local 2036, American Federation of Teachers, and "Dr. Bright was particularly disturbed over Dr. Burnett's refusal to recognize my doctorate from the Union School until 1985." In December 1986, appellant went to the EEOC to file a Title VII claim against Coppin. Appellant alleges that, among other things, she was advised by the EEOC that she should consider pursuing another remedy such as filing under the Maryland or Federal Equal Pay Act because the filing period had expired on the Title VII sex discrimination claim.

The evidence clearly supports our holding that appellant had ample opportunities to discover her rights under the Equal Pay Acts prior to the expiration of the limitations period.

■ Although the issue of whether failure to post notice as required under the Maryland Equal Pay Act tolls the statute of limitations has not been addressed by the Maryland courts, we shall look to the statutes and case law regarding statutes of limitations generally and statutes of limitation in respect to workers' compensation cases.

■ The traditional rule concerning the tolling of statutes of limitation is that they are to be strictly construed. *Walko Corp. v. Burger Chef Sys., Inc.*, 281 Md. 207, 210, 378 A.2d 1100 (1977).[6] Absent any statutory provision saving plaintiff's rights, the remedy is barred if the limitations period runs. *See Walko*, 281 Md. at 211–12, 378 A.2d 1100. *See also Hill v. Fitzgerald*, 304 Md. 689, 699–700, 501 A.2d 27 (1985) (holding that section 5–109 of the Courts and Judicial Proceedings article "expressly place[s] an absolute five-year period of limitation on the filing of medical malpractice claims calculated on the basis of when the injury was committed. . . . The statute is a response to the so-called crisis in the field of medical malpractice claims, *and contains no room for any implied exceptions."*) (emphasis added) (citations and footnote omitted); *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623, 500 A.2d 641 (1985) ("We have long adhered to the principle that where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it."); *Glenn v. Morelos*, 79 Md.App. 90, 99, 555 A.2d 1064, *cert. denied*, 316 Md. 427, 559 A.2d 790 (1989); *Cromwell v. Ripley*, 11 Md.App. 173, 180–81, 273 A.2d 218 (1971) (holding that

---

**6.** By amendment effective July 1, 1992, Maryland Rule 2–101(b) now provides for certain extensions of limitation periods where suits timely filed in other jurisdictions are dismissed for lack of jurisdiction or certain other reasons. The changes do not affect the holding in the case *sub judice.*

absent a rule permitting tolling of the statute of limitations, plaintiff's deposit of a motion for leave to amend in the clerk's office would not toll statute). "Maryland is one of a minority of states lacking a 'saving' statute." *Walko,* 281 Md. at 211 n. 2, 378 A.2d 1100. " '[O]rdinary diligence' [is] required of one seeking to toll the statute of limitations." *Walko,* 281 Md. at 215, 378 A.2d 1100. *See also Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 684, 404 A.2d 1064 (1979) ("The adoption of statutes of limitations reflects a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue his claim."); *Millison v. Wilzack,* 77 Md.App. 676, 685, 551 A.2d 899, *cert. denied,* 315 Md. 307, 554 A.2d 393 (1989) ("[A]n action accrues when all of its elements have occurred, and when the plaintiff knows, or, through the exercise of due diligence, should have known, that they have occurred.") (citations omitted); *Bennett v. Baskin & Sears,* 77 Md.App. 56, 76–77, 549 A.2d 393 (1988) (holding that a party seeking to toll the statute of limitations must exercise ordinary diligence in bringing his claim).

In *Walter J. Crismer & Son, Inc. v. Seal,* 258 Md. 437, 265 A.2d 918 (1970), a workers' compensation claimant sought to estop the employer from asserting the defense of the three year statute of limitations as provided by the statute. *See* Lab. & Emp. § 9–711(a). The claimant in that case relied upon a certain rule of the Workers' Compensation Commission that required employers to post conspicuously notices at their places of employment "for the purpose of giving instructions or conveying information to persons interested in, or entitled to benefits under the provisions of this Article. . . ." 258 Md. at 441, 265 A.2d 918. The Court first held that the act itself contained no posting requirement. 258 Md. at 441, 265 A.2d 918. It then held that whatever responsibility the employer had to the Commission by virtue of its rule requiring the posting of notice, the failure to post nevertheless "falls far short of amounting to a basis for estopping the employer from pleading the limitation imposed by [the statute]." 258 Md. at 441, 265 A.2d 918. *See also Montgomery County v. McDonald,* 317 Md. 466, 480–83, 564 A.2d 797 (1989) (holding that

an employer's failure to file an occupational disease report with the Workers' Compensation Commission as required by section 9–707(b) of the Labor and Employment article, had no connection with the employee's ability to file a claim within the limitations period, and the court would not judicially incorporate a tolling provision absent express legislative provision).

The Maryland Equal Pay Act does not contain any provision for tolling the statute of limitations under section 3–307(c) of the Labor and Employment article. Maryland has not expressly adopted the federal equitable tolling standard. Even if the federal standard applied, its provisions were not met in the case *sub judice*. In any event, we have held that appellant failed to present sufficient evidence as to non-posting at the time of the rendering of the summary judgment. The motion for summary judgment was properly granted.

## IV.

Appellant argues that appellee should be equitably estopped upon remand from seeking to introduce evidence regarding Dr. Hawkins's appointment in 1973. Because we affirm this case, we shall not further address this issue.

## V. Conclusion

We note that appellee submitted, in support of its motion for summary judgment, exhibits that established that at the time appellant was hired as an instructor, she did not meet the minimum requirements for the rank of assistant professor as specified in the Coppin State Faculty Handbook 1970–71. Appellant did not have any teaching experience at the college level and had not been enrolled in any doctoral program. She was therefore compensated in accordance with the Coppin pay scale consistent with her rank as instructor. The Coppin State College pay scale is established by the Board of Trustees of the State Universities and Colleges of Maryland.

When Dr. Hawkins was hired in 1973, he met the criteria for assistant professor. He had completed his doctorate course work, was working on a doctoral dissertation, and had

taught for one year at Bowie State College. Dr. Hawkins was compensated in accordance with the Coppin pay scale consistent with his rank of assistant professor. Dr. Hawkins was promoted to associate professor during the 1982–83 academic year when he received his doctorate degree. He was then compensated according to the Coppin pay scale consistent with an associate professor's rank. When Union became accredited in 1985, appellant was also promoted to associate professor. At that time, she began receiving compensation as an associate professor in accordance with the Coppin pay scale.

At the time he was hired, Dr. Hawkins possessed advanced academic credentials and teaching experience that appellant admits she did not possess when she was hired. Dr. Hawkins was a faculty member who, having achieved his doctorate at an accredited institution prior to Union's accreditation, had always possessed a greater seniority rank than appellant.

Furthermore, appellant, in essence, admitted in her answers to interrogatories, which were attached as an exhibit to her opposition to the motion for summary judgment, that she did not meet the necessary requirements for promotion and merit pay increase over the years. She stated that she "has not published any articles and/or any academic papers at the time of the incidents complained of in the Complaint." There was therefore no genuine dispute as to any material fact of whether appellant met the established criteria for merit pay increases. Appellant's oral testimony establishes that under the merit system she was not as qualified as Dr. Hawkins and, in any event, did not meet the requirements for advancement.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.