**512**

672 A.2d 660

**Donnell WEBB, Jr., a minor, etc., et al.**

v.

**JOYCE REAL ESTATE, INC., et al.**

No. 889, Sept. Term, 1995.

Court of Special Appeals of Maryland.

March 4, 1996.

514.

Alan J. Mensh (Saul E. Kerpelman on the brief), Baltimore, for appellants.

Diane S. Deros (Charles N. Ketterman, Angus R. Everton, Terrence C. McAndrews and Mason, Ketterman & Morgan, on the brief), Baltimore, for appellees.

Argued before DAVIS, HARRELL, and SALMON, JJ.

DAVIS, Judge.

This is an appeal from the grant of a motion for summary judgment in favor of appellees, Joyce Real Estate and Lee Barnstein, by the Circuit Court For Baltimore City (Ward, J.) on April 25, 1995. Appellants, Donnell Webb, Jr. and James Scott, filed a multi-count complaint against appellees, alleging that they were liable for lead poisoning suffered by appellants. After considering the parties' legal memoranda, and hearing oral argument on the matter on April 25, 1995, the trial court granted appellees' motion for summary judgment as to all counts. It is from this decision that appellants now appeal, presenting the following issues for our review:

I. Did the motions judge err in granting summary judgment when the facts viewed in the light most favorable to appellants demonstrate that the property contained chipping and flaking paint at the inception of the lease and appellees had actual notice of the defective condition?

II. Do appellants have a valid claim under the Maryland Consumer Protection Act, considering that evidence exists in the record establishing that appellees leased a rental premises to appellants which contained chipping, peeling and flaking paint at the inception of the lease?

III. Did the motions judge err in denying appellants' motion for entry upon land pursuant to MD.RULE 2–422, in that the information sought is relevant and MD.RULE 2–422 should provide for the entry upon land of a non-party?

### FACTS

Appellants, with their mother, Areathea Amos, lived at 3622 W. Belvedere Avenue from approximately July, 1991 through January, 1992. At that time, Joyce Realty, Inc. owned the property. Ernestine Thomas, Amos's sister-in-law, moved

into the property in March, 1991, three months before appellants and Amos. In May, 1994, Thomas purchased the property.

It is appellants' contention that, during the six months in which they lived at 3622 W. Belvedere Avenue, they ingested lead paint and as a result suffered varying degrees of brain damage. Several weeks after appellants moved out of the house, they received medical examinations and were found to have elevated levels of lead in their blood.

Amos stated in an affidavit that there were several areas in the house where paint was obviously peeling from the walls at the time she and appellants moved into the house. Amos's affidavit stated:

> At that time the house was not in good shape and was very dirty and dusty. [It] clearly had not been freshly painted when [Thomas] first moved in as there were old, dirty, loose paint chips and flakes on several of the windows. The house had not been renovated before [Thomas] moved in. There was loose, flaking paint that was obviously old in and around the windows in the upstairs back bedroom where [Amos] slept. There was loose, flaking paint, again obviously old, in and around the kitchen window. The basement had flaking and chipping paint all over it. It had obviously been years since that basement was painted. Because we did not recognize it as a danger my kids and I spent alot [sic] of time there.

In contrast to Amos's statement, appellees presented Thomas's deposition in which she said that the house was in good condition at the time she moved in, as well as when appellants and Amos moved in a few months later. Appellants, though, relying on Amos's affidavit, claim that appellees had knowledge of the conditions that existed at the house just prior to appellants moving in sometime during July, 1991.

As a result, appellants and Amos filed a complaint alleging negligence; Amos filed a claim for deprivation of her sons' services during their minority, for violation of the consumer protection laws, for strict liability, and for punitive damages.

After conducting discovery, appellees filed a motion for summary judgment on March 23, 1995, as to all of appellants' claims. In order to uncover evidence of lead paint in the subject property, appellants sought to compel Thomas to allow them to test her house for lead paint.[1] To that end, on March 24, 1995, pursuant to MD.RULE 2–422(a)(2), they filed a request for entry upon land. The trial court denied appellants' motion on April 11, 1995 and, after a hearing on the matter, granted appellees' motion for summary judgment as to all counts on April 25, 1995. It is from these rulings that appellants now appeal.

**I**

Appellants initially contend that the trial court erred when it granted appellees' motion for summary judgment because it held that appellants had not met their burden of producing the *prima facie* elements of their claim. Specifically, the court found that appellants could not demonstrate that appellees had notice of the defect.[2] Appellants contend that Amos's affidavit provided the court with enough evidence to establish a genuine issue of material fact surrounding the question of

---

**1.** Thomas rejected appellants' earlier request to allow them to test the house for lead paint.

**2.** Since appellant offered no evidence of the presence of lead-based paint, the trial judge could have properly granted summary judgment without reaching the question of notice to appellees. *See Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 645 A.2d 1147 (1994). Appellees' motion for summary judgment, however, was not based on appellants' inability to demonstrate that the property contained lead-based paint. Instead, it focused solely on whether the record supported appellees' allegation that there was no showing that they received notice, even though appellees raise the lack of evidence of lead-based paint on this appeal. Apparently, the reason the court and the parties gave short shrift to whether the evidence indicated the presence of lead-based paint was the fact that a pivotal issue was the attempt by appellant, in the proceedings below, to obtain access to the property for that very purpose, i.e., to establish the presence of lead-based paint. Concerning appellants' attempt to secure access to the property, the trial court quipped, "I don't think it would really help you anyway ... [because] [a]ll it would show is the condition [of the house] at the time of the test. It might, I don't know."

notice and thereby defeat appellees' motion for summary judgment.

The trial court stated, and appellants do not dispute, that "[t]he issue is whether or not there [was] flaking or chipping paint at the time that the tenant moved into the house." The court and both parties understood this to mean that the paint had to have been peeling and chipping at a time when simultaneously both the house was in appellees' control and Thomas occupied the house. In that regard, at the hearing, the trial court told appellants, "That's where you don't have any evidence...." Appellants responded that Amos's affidavit provided enough evidence that one could rationally infer that paint was chipping at the time Thomas moved into it. Appellants stated:

> [Amos] testified that when she moved in there, ... there [was] chipping paint in several locations, old, dirty, loose paint chips and flakes on several of the windows.

The trial court, though, rejected appellants' argument that Amos's affidavit could dispute appellees' claim that when they rented the house to Thomas, it was in good condition. The court stated:

> Well, how does that [Amos's affidavit] create a dispute? It doesn't give evidence as to what—not whether the paint was freshly painted or not but whether or not there was chipping and flaking paint anywhere at the time that [Thomas] moved into the property.

> \* \* \* \* \* \*

> So the landlord rents to Mrs. Thomas.

> \* \* \* \* \* \*

> At that time he in effect is charged with the knowledge of the condition of the property.

> \* \* \* \* \* \*

> Then we have Ms. Amos ... [who's] entitled to believe that the property that she's moving into is also free of defects under the law....

The only question is, is there a dispute of fact enough to take to a jury. I don't think so because of the fact that her testimony is three months out of date and the testimony as of what was present at that time is definite [Thomas's statement that the house was in good condition and Barnstein's affidavit supporting the summary judgment motion, stating the same].

* * * * * *

[Amos] doesn't know what the condition was then [when Thomas moved in]. She only knows what the condition was when she moved in and we have definite testimony as to what that condition was at that time.

In other words, the trial court held that the evidence showed that, at the time Thomas moved into the house, it was in good condition. Amos's affidavit concerning the condition of the house when she moved in, some three months later, did not dispute this adequately. Rather, because the house was rented to Thomas, the trial court found that three months after the house was no longer in appellees' control there existed a dispute as to its condition. Hence, the trial court granted appellees' motion for summary judgment.

Appellants maintain on appeal essentially the same argument they presented to the trial court. They concede that Thomas's deposition established that the house was in good condition when she moved into it in March, 1991. It is their contention, however, that Amos's affidavit presented the trial court with evidence that the house had chipping and peeling paint, which contradicts Thomas's deposition statement and creates a genuine dispute of material fact—whether the house was in good condition when originally leased to Thomas. Appellants also assert that appellees' motion for summary judgment was supported by a defective affidavit and that, consequently, their motion lacked the necessary evidentiary support.

Appellants note that appellees' motion for summary judgment was supported by the affidavit of Lee Barnstein which was sworn to as follows: "under the penalties of perjury, that

the foregoing Affidavit is true and correct to the best of my
knowledge, information and belief." After stating the rule
that an affidavit supporting a summary judgment motion must
be made upon personal knowledge, MD.RULE 2–501(c), appel-
lants cite *Weaver v. Realty Growth Investors,* 38 Md.App. 78,
379 A.2d 193 (1977), in support of their assertion that Barn-
stein's assertedly defective affidavit should not have been
considered by the trial court.

MARYLAND RULE 2–501(c) requires an affidavit sup-
porting a motion for summary judgment, *inter alia,* to be
made upon personal knowledge. The Court of Appeals "has
long held that to be sufficient to sustain a motion for summary
judgment, an affidavit must *contain language that it is made
on personal knowledge,* and that the affiant is competent to
testify to the matters stated therein." *A.J. Decoster Co. v.
Westinghouse Elec. Corp.,* 333 Md. 245, 263, 634 A.2d 1330
(1994) (citations omitted) (emphasis added). *See also Nixon v.
State,* 96 Md.App. 485, 500, 625 A.2d 404, *cert. denied,* 332 Md.
454, 632 A.2d 151 (1993). Where an affiant states that the
information contained in the affidavit is true and correct "to
the best of his knowledge, information and belief," Rule 2–
501(c) has not been satisfied and the affidavit must be disre-
garded. *Williams v. Anne Arundel County,* 334 Md. 109, 127,
638 A.2d 74 (1994); *Mercier v. O'Neill Assoc.,* 249 Md. 286,
287, 239 A.2d 564 (1968); *Fletcher v. Flournoy,* 198 Md. 53, 58,
81 A.2d 232 (1951); *Cottman v. Cottman,* 56 Md.App. 413,
429–30, 468 A.2d 131 (1983). Hence, it is arguable that,
because of the confusing affirmation basis, Barnstein's affida-
vit is defective and should not have been considered by the
trial court as it reached its decision regarding appellees'
motion for summary judgment.

Even if we deemed this affidavit as defective, the trial
court's consideration of it is not necessarily reversible error.
Treating the motion as though the contents of the affidavit
were not before the court, there nevertheless remains no
genuine dispute of material fact and appellees are entitled to
judgment as a matter of law. When this is the case, a trial

court's decision may be upheld. *See Preissman v. Harmatz,* 264 Md. 715, 721, 288 A.2d 180 (1972); *Myers v. Montgomery Ward & Co.,* 253 Md. 282, 290, 252 A.2d 855 (1969). Consequently, because the trial court had before it testimony and other evidence furnished by appellants and appellees in various depositions, interrogatories,[3] and affidavits that confirm the information contained in Barnstein's affidavit, this Court may affirm the trial court's holding.

 When considering the evidence, we must view all facts and the reasonable inferences to be drawn therefrom in the light most favorable to appellants as the non-moving party. *See Delia v. Berkey,* 41 Md.App. 47, 51, 395 A.2d 1189, *aff'd,* 287 Md. 302, 413 A.2d 170 (1980). Furthermore, because the summary judgment procedure may be used only to determine whether there exists a factual dispute requiring a trial, *Foy v. Prudential Ins. Co. of America,* 316 Md. 418, 422, 559 A.2d 371 (1989), the trial court may not resolve any factual issues and the standard for appellate review is whether its decision was legally correct. *A.J. Decoster,* 333 Md. at 261, 634 A.2d 1330; *Nixon,* 96 Md.App. at 500, 625 A.2d 404.

 In the case *sub judice,* the motion for summary judgment survives the determination that the supporting affidavit is defective. As the landlord's knowledge of lead paint is central to appellants' claim, *See Richwind v. Brunson,* 335 Md. 661, 673–74, 645 A.2d 1147 (1994); *Bartholomee v. Casey,* 103 Md.App. 34, 53, 651 A.2d 908 (1994), *cert. denied,* 338 Md. 557, 659 A.2d 1293 (1995), any motion for summary judgment must be supported by uncontroverted evidence that appellees had no knowledge, and had no reason to have knowledge, of lead-based paint existing in the house. Barnstein's affidavit states, among other things, that he was not aware of the presence of lead paint on the premises. This information however was provided by other evidence the trial court had

---

**3.** Answers by a party under oath properly place before a trial court evidence to be considered on a motion for summary judgment. *See Cottman,* 56 Md.App. at 420, 468 A.2d 131; *Vanhook v. Merchants Mut. Ins. Co.,* 22 Md.App. 22, 27, 321 A.2d 540 (1974).

before it when it considered appellees' motion for summary judgment.

The trial court reached its decision because it had uncontradicted evidence before it that appellees did not have knowledge of the presence of lead paint in the house. This conclusion is supported by Thomas's deposition statement that the house was in good condition and Amos's statement that she did not notify appellees of the presence of lead-based paint in the house. The trial court said:

> The only question is, is there a dispute of fact enough to take to a jury. I don't think so because of the fact that her testimony is three months out of date and the testimony as of what was present at that time is definite.

Amos's affidavit and Thomas's deposition statements provided the trial court with ample evidence from which it could draw the above-stated conclusion. It did not need Barnstein's affidavit to find that appellees had no knowledge, nor any reason to have knowledge, of the peeling and chipping lead paint.

We recognize, of course, that the moving party has the burden to state sufficient grounds for summary judgment and to provide support for his or her arguments "by placing before the court facts that would be admissible in evidence or otherwise detailing the absence of evidence in the record to support a cause of action." *Bond v. Nibco, Inc.,* 96 Md.App. 127, 134, 623 A.2d 731 (1993). *See also Willis v. Allstate Ins. Co.,* 88 Md.App. 21, 25, 591 A.2d 896 (1991). It is only "[i]f the moving party is able to set forth sufficient facts to demonstrate clearly the absence of a genuine dispute as to a material fact [that] the non-moving party must [then] counter or oppose the motion by demonstrating that there is indeed a genuine dispute as to a material fact." *Chesapeake v. Mayor and City Council of Baltimore,* 89 Md.App. 54, 69, 597 A.2d 503 (1991). In the case *sub judice,* despite the defective nature of Barnstein's affidavit, appellees were able "to set forth sufficient facts [Amos's affidavit and Thomas's deposition statements] to demonstrate clearly the absence of a genuine dispute as to a

material fact." As a result, appellants were required to rebut appellees' assertion that they had no notice of a lead-paint problem. Because appellants were unable to do so, the trial court's decision was not in error.

## II

■ Appellants next request this Court to confirm that they "have a valid claim under the Maryland Consumer Protection Act, in that the evidence exists in the record establishing that the landlord leased a rental premises to the [a]ppellants which contained chipping, peeling and flaking paint at the inception of the lease." Appellants argue that given the above facts, they are entitled to pursue a claim against appellees. It is appellants' assertion that *Richwind*, MD.CODE ANN., COMM.LAW, §§ 13–101 to 13–501 (1975, 1990 Repl.Vol.), BALTIMORE CITY HOUSING CODE, Article 13, Section 702 and *Golt v. Phillips*, 308 Md. 1, 517 A.2d 328 (1986), establish that if a hazardous condition exists at the inception of a lease, then a landlord will be held to have knowledge of it and may be liable for any injuries caused by that condition.

We cannot address appellants' argument because appellants do not establish, and we cannot find, any indication in the record that the trial court held to the contrary. Appellants ask us to assume certain facts to be true and to confirm, based on their hypothesis, that a viable Consumer Protection Act case will lie. It is apparent, however, that the trial court granted summary judgment because it found that appellants had not demonstrated that part of their factual predicate was true. We cannot assume its veracity and proceed to pass judgment on the validity of appellants' claim when the trial court did not do so. Appellants are asking this Court to render an advisory opinion that if the facts as they allege them to be are true, then they may pursue a Consumer Protection Act claim when no trial court has indicated otherwise. We may not render advisory opinions. *Hatt v. Anderson*, 297 Md. 42, 46, 464 A.2d 1076 (1983); *Maryland–Nat'l Capital Park And Planning Comm'n v. Randall*, 209

Md. 18, 27, 120 A.2d 195 (1956). Consequently, we shall not consider this issue.

## III

Appellants finally contend that the trial court erred when it denied their motion for entry upon land pursuant to MD.RULE 2–422(a)(2). Appellants state that in order to prevail in their case against appellees for negligent lead-based paint poisoning, they must demonstrate its presence at 3622 W. Belvedere Avenue. As a result, appellants requested that the present owner, Thomas, allow them to enter the property for the purpose of conducting tests to determine whether the house contains lead-based paint. Thomas, however, denied appellants access to her house. Appellants subsequently filed a motion for entry upon land asking the trial court to compel Thomas to allow appellants to conduct said tests. The motion was denied on April 11, 1995.

> Appellants concede that MD.RULE 2–422(a)(2) provides that [a]ny party may serve at any time one or more requests to any other party ... (2) to permit entry upon designated land ... in the possession or control of the *party* upon whom the request is served for the purpose of inspection, ..., testing, or sampling the property....

*Id.* (emphasis added). As a result, appellants state that it appears that Rule 2–422(a)(2) may only be used against another "party" to an action. This, appellants assert, cannot be the case since such an interpretation would mean that "there is no vehicle within the Rules for a party in a lawsuit to obtain discovery in the form of entry upon land of a non-party."

Because appellants deem this to be an absurd result, they contend that this Court should interpret Rule 2–422(a)(2) to allow its use against a non-party. Appellants assert that this Court, when interpreting a Maryland Rule that is similar to a Federal Rule of Civil Procedure, may look to federal decisions construing the corresponding federal rule for guidance. *See Pleasant v. Pleasant,* 97 Md.App. 711, 732, 632 A.2d 202 (1993). In this case, appellants argue that there is no report-

ed appellate analysis of MD.RULE 2-422(a)(2) to shed light on its application against nonparties. They note, however, that MD.RULE 2-422(a)(2) was derived, at least in part, from F.R.C.P. 34. As a result, appellants argue that F.R.C.P. 34(c), which allows for nonparties to be compelled to submit to an inspection, demonstrates that MD.RULE 2-422(a)(2) should apply to nonparties as well.

Appellants' argument is flawed. Appellants note that F.R.C.P. 34(c) was added to fill a specific void in the federal rules—until its addition, nonparties could not be compelled to produce evidence or to submit to inspections pursuant to the federal rules. Appellants cite *Thomas v. FAG Bearings Corp.*, 860 F.Supp. 663, 663–64 (W.D.Mo.1994); *Thomas v. FAG Bearings Corp.*, 846 F.Supp. 1382, 1399 (W.D.Mo.1994); *Reilly Tar Corp. v. Burlington N.R. Co.*, 589 F.Supp. 275, 278–79 (Minn.1984); *Wimes v. Eaton Corp.*, 573 F.Supp. 331, 334 (E.D.Wis.1983); *Home Ins. Co. v. First Nat. Bank of Rome*, 89 F.R.D. 485, 486–87 (N.D.Ga.1980); *Investors Mortgage Insurance Co. v. Dykema*, 598 F.Supp. 666 (D.Ore.1984), for the proposition that since the addition of F.R.C.P. 34(c) nonparties may be compelled to submit to an inspection.

Appellants' interpretation of the above-cited federal case law is inaccurate. In fact, several of the cases indicate that a non-party is not subject to F.R.C.P. 34 and these cases, when fully analyzed, are persuasive authority for this Court's conclusion that MD.RULE 2–422(a)(2) does not apply to nonparties. Federal Rule 34(c) was added to F.R.C.P. 34 in 1970. At that time, subsection (c) stated only that F.R.C.P. 34(a) did not "preclude independent actions for discovery against persons not parties," FEDERAL RULES OF CIVIL PROCEDURE 34, Notes of Advisory Committee on 1970 Amendments to Rules, Subdivision (c), although it was clear that F.R.C.P. 34 applied only to parties. *Id.* It was not until a 1991 amendment to Federal Rule 34 that subsection (c) was changed to its present form allowing a party to compel a non-party to produce documents and things or to submit to an inspection. The federal case law cited by appellants makes clear that, absent the 1991 version of subsection (c), Federal Rule 34 would not apply to nonpar-

ties. "[T]he drafters of [Federal] Rule 34, [while] ... providing a means for securing production of documents and things and entry upon land for inspection, *limited the applicability of the rule to parties only.*" *Wimes,* 573 F.Supp. at 333 (emphasis added). *See also Reilly Tar Corp.,* 589 F.Supp. at 278–79; *Home Ins. Co.,* 89 F.R.D. at 486–87; *Investors Mortgage Insurance Co.,* 598 F.Supp. 666. As a result, F.R.C.P. 34 only applies to nonparties by virtue of the 1991 amendment.

As noted above, prior to the addition of 34(c) in its present form, F.R.C.P. 34 did not provide for nonparties to be compelled to submit to inspections. Federal Rule 34(a)(2) states:

Any party may serve on any other party a request ... (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection ..., testing, or sampling the property....

This is almost identical to the wording in MD.RULE 2–422(a)(2):

Any party may serve at any time one or more requests to any other party ... (2) to permit entry upon designated land ... in the possession or control of the *party* upon whom the request is served for the purpose of inspection, ..., testing, or sampling the property....

In sum, until the Court of Appeals amends Rule 2–422 to reflect the addition made to the federal rules by F.R.C.P. 34(c), MD.RULE 2–422(a)(2) is similar to F.R.C.P. 34(a) and, if we are to seek guidance from federal case law in interpreting MD.RULE 2–422(a)(2), we look to the federal interpretation of F.R.C.P. 34 prior to the 1991 amendment to 34(c). At that time, F.R.C.P. 34 applied only to parties. *See Thomas,* 846 F.Supp. at 1399. Consequently, nonparties·may not be compelled to submit to an inspection of their property.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**